JONG–YUL LIM, Plaintiff,

v.

The **INTERNATIONAL INSTITUTE OF METROPOLITAN DETROIT, INC., Defendant.**

Civ. No. 80–72840.

United States District Court, E. D. Michigan, S. D.

March 17, 1981.

Sheldon J. Stark, Detroit, Mich., for plaintiff.

Albert D. Miller and Gerald K. Flagg, Southfield, Mich., for defendant.

## MEMORANDUM OPINION

CHURCHILL, District Judge.

This action is before the court under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* The plaintiff set forth two additional state claims in the complaint and asserts that the federal court has jurisdiction over these non-federal claims under the doctrine of pendent jurisdiction.

Whether this court has pendent jurisdiction with respect to any or all of the plaintiff's state law claims is an issue which has been briefed and argued, although raised by the Court on its own motion.

The plaintiff's complaint filed July 31, 1980, contains the following allegations.

The plaintiff is a male, United States citizen of Korean birth and origin. The plaintiff is an employee of the defendant corporation in Michigan. The defendant failed to promote the plaintiff to an available position for which he had applied and for which he was well qualified. Instead, the defendant promoted a less qualified woman to the position. The place of birth and national origin of the woman receiving the promotion are not alleged. The plaintiff filed a timely charge of sex discrimination with the Equal Employment Opportunity Commission and received a right-to-sue letter dated May 31, 1980.

The plaintiff also alleges that the position for which he sought promotion was not posted on the staff bulletin board as required by the "Personnel Policies and Procedures Manual" of the defendant, and that efforts by the plaintiff to grieve through the grievance mechanism of the manual were futile in that the plaintiff was not afforded a hearing and was never officially informed of the reasons for his rejection.

The plaintiff's complaint sets forth the following claims for relief:

(1) A claim for employment discrimination on the basis of sex pursuant to 42 U.S.C. §§ 2000e *et seq.*, commonly referred to as Title VII of the Civil Rights Act of 1964.

(2) A claim for employment discrimination on the basis of sex, national origin, and birth pursuant to M.C.L.A. §§ 37.2101 *et seq.*, commonly referred to as the Elliott-Larsen Civil Rights Act of Michigan.

(3) A claim, contractual in nature, founded upon Michigan's common law as defined in *Toussaint v. Blue Cross*, 408 Mich. 579, 292 N.W.2d 880 (1980).

By way of "legal relief" the plaintiff seeks compensatory damages, exemplary damages, interest, costs, and attorney fees. By way of "equitable relief" he seeks an injunction against further acts of sexual or national origin discrimination, a court-ordered promotion, back pay, pension and fringe benefits, attorney fees, interest, and costs. The "legal relief" sought is, of course, available, if at all, only under the plaintiff's Michigan law claims. He is entitled to a jury trial under Michigan law and has demanded a jury trial of all legal issues.

■ The Court has been caused to examine the scope of jurisdiction of state law claims pendent to the Title VII claim, on its own motion, because of the devastating effect of pendent state law claims on the Court's ability to carry out its statutory duty "to assign the case for hearing at the earliest practicable date and to cause the case to be in every way expedited." 42 U.S.C. § 2000e–5(f)(5). The Court has been encouraged to do so by a statement in *Federal Practice and Procedure*, Wright, Miller and Cooper, Cumulative Supplement to Volume 13, Section 3567 at 352, which reads:

"Although only pendent claims, and not pendent parties, were involved, Aldinger has been read to mean that where Congress has significantly limited the power of the federal courts as to the amount of recovery for which a defendant can be liable, the court lacks power to hear a pendent state claim that would increase the recovery to beyond that limit."

*Citing Wesley v. John Mullins & Sons, Inc.*, 444 F.Supp. 117 (D.C.N.Y.1978). *See Comment, Aldinger v. Howard and Pendent Jurisdiction*, 77 Colum.L.Rev. 127 (1977).

However unclear *Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976), may be with respect to statutory limitation on pendent jurisdiction, the following statement from the majority opinion in *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978), clarifies the issue:

"It is apparent that Gibbs delineated the constitutional limits of federal judicial power. But even if it be assumed that the District Court in the present case had constitutional power to decide the respondent's lawsuit against the petitioner, it does not follow that the decision of the Court of Appeals was correct. Constitutional power is merely the first hurdle that must be overcome in determining that a federal court has jurisdiction over a particular controversy. For the jurisdiction of the federal courts is limited not only by the provisions of Art. III of the Constitution, but by Acts of Congress. [Citations omitted].

"That statutory law as well as the Constitution may limit a federal court's jurisdiction over non-federal claims is well illustrated by two recent decisions of this Court, *Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276, and *Zahn v. International Paper Co.*, 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511. In *Aldinger* the Court held that a Federal District Court lacked jurisdiction over a state-law claim against a county, even if that claim was alleged to be pendent to one against county officials under 42 USC § 1983 [42 USCS § 1983]. In *Zahn* the Court held that in a diversity class action under Fed. Rule Civ.Proc. 23(b)(3), the claim of each member of the plaintiff class must independently satisfy the minimum jurisdictional amount of $10,000 set by 28 USC § 1332(a) [28 USCS § 1332(a)], and rejected the argument that jurisdiction existed over those claims that involved less than $10,000 as ancillary to those that involved more. In each case, despite the fact that federal and nonfederal claims arose from a 'common nucleus of operative fact,' the Court held that the statute conferring jurisdiction over the federal claim did not allow the exercise of jurisdiction over the nonfederal claim.

"The *Aldinger* and *Zahn* cases thus make clear that a finding that federal and nonfederal claims arise from a 'common nucleus of operative fact,' the test of Gibbs, does not end the inquiry into whether a federal court has power to hear the nonfederal claims along with the federal ones. *Beyond this constitutional minimum, there must be an examination of the posture in which the nonfederal claim is asserted and of the specific statute that confers jurisdiction over the federal claim, in order to determine whether 'Congress in [that statute] has ... expressly or by implication negated' the exercise of jurisdiction over the particular nonfederal claim. Aldinger v. Howard, supra, [427 U.S.] at 18, 96 S.Ct. 2413, 49 L.Ed.2d 276.*"

*Id.* at 371–73, 98 S.Ct. 2396, at 2401–02, 57 L.Ed.2d 274 (emphasis added, footnotes omitted).

Although first noted in the context of pendent party jurisdiction, the necessity of examining the statute giving rise to the federal claim to ascertain the limitation, if any, on the power of a federal court to exercise pendent jurisdiction over a state law claim has been recognized in cases involving ordinary pendent jurisdiction. *Brame v. Ray Bills Finance Corp.,* 85 F.R.D. 568, 595–96 (N.D.N.Y.1979); *Wesley v. John Mullins & Sons, Inc.,* 444 F.Supp. 117, 120 (E.D.N.Y.1978). *See* Comment, *supra* at 147–52.

In *Aldinger, supra,* the Court found that the statutory exclusion of a claim against a municipality under 42 U.S.C. § 1983 was indicative of congressional intent to preclude pendent federal jurisdiction over state claims brought against such an entity. 427 U.S. at 17, 96 S.Ct. at 2421. The exclusion of a claim is but one of the ways in which congressional intent to negate the exercise of jurisdiction over a non-federal claim can be manifested.

A specific congressional limitation on the amount of recovery or on the nature of relief available under the federal statute can be equally as probative of congressional intent. *Wesley, supra* (specific limitation on the amount of recovery). More procedural, yet just as significant to the determination of congressional intent, are any restrictions on the time within which claims under the statute must be adjudicated or on the manner of such adjudication.

Having followed the dictate of the Supreme Court in *Aldinger, supra,* and having examined the numerous provisions of Title VII as well as the posture in which the state claims are being asserted, it is the opinion of this Court that Congress has, by implication, negated the exercise of jurisdiction over the particular non-federal claims set forth in the complaint.

■ The limited grant of relief under Title VII is an indication of congressional intent to negate the exercise of pendent jurisdiction over the plaintiff's state law claims. The relief available to an aggrieved party under the federal statute is equitable in nature. *E. E. O. C. v. Detroit Edison Co.,*

515 F.2d 301 (6th Cir. 1975), *vacated and remanded on other grounds,* 431 U.S. 951, 97 S.Ct. 2669, 53 L.Ed.2d 267 (1977). The statutory exclusion of legal remedies under Title VII reveals a congressional desire to restrict the type of relief awarded in discrimination claims brought under this statute. Joinder of state law claims under which a plaintiff may be entitled to compensatory or punitive damages directly conflicts with this congressional intent of limited relief.

■ This Court recognizes that where a Title VII claim is joined with claims brought under other federal civil rights statutes, such as 42 U.S.C. § 1981 and 42 U.S.C. § 1983, both legal and equitable relief may be appropriately awarded. *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). The joinder of such relief where two federal statutes are involved does not implicate the jurisdictional concern voiced by the Supreme Court in *Aldinger* and *Kroger* and does not minimize the significance of the congressional limitation on the type of relief awarded under Title VII in determining whether a federal court has the power to exercise jurisdiction over a state claim that provides for broader relief.

■ Perhaps most significant in revealing congressional negation of the exercise of pendent jurisdiction under these circumstances are the specific procedural limitations contained in Title VII. The foremost procedural limitation surfaces in the form of the express congressional determination that Title VII claimants are not entitled to a jury trial. 42 U.S.C. § 2000e–5(f)(4). In addition, Congress has specifically set forth the time within which claims under Title VII should be adjudicated, one-hundred twenty (120) days. 42 U.S.C. § 2000e–5(f)(5). Congress has also provided for an alternative method of adjudication, trial by a master, if the court finds that the Title VII claim cannot be tried within the 120 days. *Id.*

The joinder of state law claims which expand the scope of issues to be resolved

and preclude the possibility of referring the matter to a master would frustrate the express congressional intent, as evidenced by the foregoing provisions, of having employment discrimination cases under Title VII resolved in the most expeditious manner possible.

Assuming *arguendo* that this Court is empowered to exercise pendent jurisdiction over the state law claim in this matter, it would decline to exercise this power for many of the same reasons such power has been determined not to exist. Apart from the obvious conflict arising out of the plaintiff's right to a jury trial under the Michigan law claims and the non-existence of such a right under Title VII, the nature of the discrimination claimed under the state law claims is much broader than the claim for sex discrimination asserted under Title VII. Moreover, the plaintiff's common law contract claim, as recently defined by the Michigan Supreme Court in *Toussaint, supra*, involves a multitude of unexplored and necessarily unresolved questions of state law. Similarly, the validity of the Elliott-Larsen Act has been subject to recent attack and must ultimately be resolved by the Michigan Supreme Court. Finally, the clear congressional mandate of adjudicating Title VII claims in an expedited manner would be severely thwarted. Not only would the additional issues raised by the state law claims delay the progress of the entire case, but one of the avenues of obtaining expedited relief under Title VII, the assignment of the case to a master, would be entirely foreclosed.

In view of the foregoing, an order will be entered dismissing all of the plaintiff's claims except the Title VII claim.