**Shelby Jean FRYE, Plaintiff,**

v.

**PIONEER LOGGING MACHINERY, INC., Defendant.**

Civ. A. No. 81–2594–15.

United States District Court,
D. South Carolina,
Columbia Division.

Jan. 14, 1983.

James L. Bell, Brian Dumas, Columbia, S.C., for plaintiff.

Kenneth L. Childs, David T. Duff, Emma Ruth St. Pierre, Childs, Duff & St. Pierre, P.A., Columbia, S.C., for defendant.

### ORDER

HAMILTON, District Judge.

In this action before the court[1] pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.,* plaintiff sought recovery against her employer, defendant Pioneer Logging Machinery, Inc. (hereinafter "Pioneer"), for Pioneer's failure to reinstate plaintiff to her position after she had taken a maternity leave of absence. Plaintiff also asserted in her second amended complaint four state law claims against Pioneer and/or LeGrand White and Sara Rabon, both employees and agents of Pioneer who were originally named as defendants, and alleged that this court had jurisdiction over such claims based on the doctrine of pendent jurisdiction. Although the question of the court's jurisdiction to hear plaintiff's state claims was addressed in defendants' motion for partial summary judgment, the court also raised the jurisdictional question *sua sponte,* thus obviating any need to respond to plaintiff's contention that defendants had waived their right to challenge the court's jurisdiction.

On November 18, 1982, the court concluded that it was without power to adjudicate plaintiff's state law claims and that, even assuming that it had jurisdiction, as a matter of discretion, it would decline to exercise such power. Accordingly, for the reasons set forth and the authority cited herein, the court dismissed from this action the pendent claims and defendants White and Rabon.

In addition to the Title VII claim, the plaintiff's second amended complaint contained the following four state-law claims for relief:

1. Alleged breach of an oral contract by defendant Pioneer relating to Pioneer's claimed promise to reinstate plaintiff after her maternity leave in return for plaintiff's locating and training her temporary replacement (second cause of action);

2. Alleged tortious interference with the aforementioned oral contract between plaintiff and Pioneer by defendant Rabon (third cause of action);

3. Alleged tortious interference by Pioneer with an oral contract between plaintiff and Rabon based on the claimed promise of Rabon to give up her temporary position when plaintiff decided to return to work (fourth cause of action); and

4. Alleged tort of outrage or intentional infliction of emotional distress by all defendants in connection with the termination of plaintiff's employment (fifth cause of action).

■ In determining whether state law claims can be appended to a federal claim the court turns to the analysis used by the

---

1. Subsequent to the dismissal of the pendent state claims, plaintiff's Title VII claim was tried to the court on November 19, 1982, with judgment being entered against plaintiff on that claim on that date.

Supreme Court in *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Initially, the court must ascertain whether the federal claim is of sufficient substance to confer federal jurisdiction. Then the court must determine whether the federal and state claims arise out of a "common nucleus of operative fact [which the plaintiff] would ordinarily be expected to try ... in one judicial proceeding ...." 383 U.S. at 725, 86 S.Ct. at 1138. There is no question herein that plaintiff's Title VII claim is of sufficient substance to confer jurisdiction on this court. Defendants have conceded as much. There is, however, at least some question whether the "common nucleus of operative fact" requirement is satisfied in the instant case.

Factually, plaintiff's federal and state claims are quite divergent. The second, third, and fourth causes of action are founded upon the operative facts of alleged oral contracts that came into existence months before the failure to reemploy, the focal point of the Title VII claim. Likewise, the operative facts relating to an alleged discriminatory refusal to reinstate differ substantially from the facts of extreme and outrageous conduct and severe emotional distress which would form the basis of the fifth cause of action. Other courts have held that similar differences in operative facts between the state and federal claims make compliance with the second prong of the *Gibbs* test impossible. *See, e.g., Sanders v. Duke University,* 538 F.Supp. 1143 (M.D.N.C.1982); *Klupt v. Blue Island Fire Department,* 489 F.Supp. 195 (N.D.L.1980); *Elliot v. Employers Reinsurance Corp.,* 28 F.E.P.Cas. 1058 (D.Kan. 1981); *Madery v. International Sound Technicians Local 695,* 79 F.R.D. 154 (C.D.Cal. 1978).

■ The better rule, however, and the view of the Fourth Circuit, appears to require only a loose factual connection between the claims to satisfy the requirement that they arise from a common nucleus of operative fact. Only when the state law claim is totally different from the federal claim is there no power to hear the state claim. *See* Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction* § 3567, pp. 445–47; *Webb v. Bladen,* 480 F.2d 306 (4th Cir.1973); *cf. Hales v. Winn-Dixie Stores, Inc.,* 500 F.2d 836, 848 (4th Cir.1974) (state law claim was "separately maintainable and determinable without any reference to the facts alleged or contentions stated in or with regard to the [federal] count"). Under such a standard, the court is constrained to hold that plaintiff has met the second *Gibbs* test. Her state and federal claims arise out of the same nucleus of operative fact, if only in the sense that the claims derive from the failure or refusal to reemploy plaintiff after her maternity leave.[2]

■ *Gibbs* delineated the constitutional limits of federal judicial power under Article III of the Constitution. As the Supreme Court has since made clear in *Aldinger v. Howard,* 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976), and more recently in *Owen Equipment & Erection Co. v. Kroger,* 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978), the existence of Article III power does not end the inquiry into whether a federal court has power to hear the nonfederal claims along with the federal ones. Beyond the "constitutional minimum,"

> [T]here must be an examination of the posture in which the nonfederal claim is asserted and of the specific statute that confers jurisdiction over the federal claim, in order to determine whether "Congress in [that statute] has ... expressly or by implication negated" the exercise of jurisdiction over the particular nonfederal claim.

*Owen Equipment & Erection Co. v. Kroger,* 437 U.S. at 373, 98 S.Ct. at 2402, *quoting*

---

**2.** The court's conclusion that the state and federal claims share a common nucleus of operative fact so as to satisfy the *Gibbs* test of constitutional power to hear the state claims clearly does not preclude a determination that the state and federal theories are so divergent, or the state issues so predominate, that the court, in its discretion, should refrain from exercising pendent jurisdiction. *See infra.*

*Aldinger v. Howard,* 427 U.S. at 18, 96 S.Ct. at 2422. Thus, under *Aldinger* and *Kroger,* the federal courts must consider whether the statutory grant of federal jurisdiction in question, either expressly or by implication, excludes the state claim from federal court jurisdiction.

In *Aldinger,* the Supreme Court reasoned that because (under the then case law) Congress had excluded political subdivisions from the "persons" answerable to claims brought under 42 U.S.C. § 1983, Congress had "by implication" negated the existence of pendent party jurisdiction over nonfederal claims raised against such entities in actions predicated upon Section 1983 and its jurisdictional counterpart, 28 U.S.C. § 1343(3). 427 U.S. at 16–19, 96 S.Ct. at 2421–23.

The Supreme Court in *Kroger* engaged in a similar analysis. After examining the legislative and judicial history of the federal diversity statute, 28 U.S.C. § 1332(a)(1), the Court emphasized that the "statute and its predecessors have consistently been held to require complete diversity of citizenship" and concluded that this history "clearly demonstrates a congressional mandate that diversity jurisdiction is not available when any plaintiff is a citizen of the same state as any defendant." 437 U.S. at 373, 374, 98 S.Ct. at 2402, 2403. Because the district court's exercise of ancillary jurisdiction in *Kroger* had destroyed complete diversity, the Supreme Court ruled that to sustain such jurisdiction "would simply flout the congressional command." *Id.* at 377, 98 S.Ct. at 2404. The Court indicated that the plaintiff had no reason to complain if ancillary jurisdiction does not encompass all his possible claims when he has chosen the federal forum, with its limitations, rather than the state forum. *Id.* at 376, 98 S.Ct. at 2404.

At least three district courts have held that the Title VII statute and its judicial history reveal an implied congressional command negating pendent jurisdiction in Title VII based actions. *See Bennett v. Southern Marine Management Co.,* 531 F.Supp. 115 (M.D.Fla.1982); *Jong-Yul Lim v. Interna-*

*tional Institute of Metropolitan Detroit,* 510 F.Supp. 722 (E.D.Mich.1981); *Kiss v. Tamarac Utilities, Inc.,* 463 F.Supp. 951 (S.D.Fla. 1978).

The most carefully reasoned of the decisions finding a congressional intent in Title VII against entertaining state claims of the kind presented herein is *Jong-Yul Lim v. International Institute of Metropolitan Detroit, supra,* where, in addition to his Title VII claim based on sex discrimination, the plaintiff alleged pendent claims under the Michigan fair employment practices law and under Michigan common law of contract. Relying upon *Aldinger* and *Kroger,* the *Lim* court held that several procedural characteristics of Title VII, as well as a specific congressional limitation on the nature of the relief and the amount of recovery available under that federal statute, negated by implication the exercise of jurisdiction over the particular nonfederal claims set forth in the complaint.

The court in *Lim* began its analysis by noting that the relief which Congress has provided under Title VII is equitable in nature, including only reinstatement and backpay, *see* 42 U.S.C. § 2000e–5(g); *EEOC v. Detroit Edison Co.,* 515 F.2d 301 (6th Cir.1975), *vacated and remanded on other grounds,* 431 U.S. 951, 97 S.Ct. 2669, 53 L.Ed.2d 267 (1977), and that the statutory exclusion of legal remedies under Title VII reveals a congressional desire to restrict the type of relief awarded in discrimination claims brought under the statute. The court concluded that joinder of state law claims, under which a plaintiff might be entitled to compensatory and punitive damages, would directly conflict with the congressional intent of limited relief. *Lim,* 510 F.Supp. at 725. *See also Gerlach v. Michigan Bell Telephone Co.,* 448 F.Supp. 1168, 1173 (E.D.Mich.1978).

The *Lim* court also noted that several procedural provisions of Title VII strongly supported the finding of a congressional negation of the exercise of pendent jurisdiction. Foremost in the court's reasoning were the congressional mandates that Title VII cases be tried to a judge, not a jury,

and that such actions be expedited. *See* 42 U.S.C. § 2000e–5(f)(4)–(5). The court noted the statute provided that if a Title VII case could not be tried within the 120 days prescribed, it was empowered by the statute to refer the case to a master. 42 U.S.C. § 2000e–5(f)(5). These and other provisions, in the court's opinion, indicated a clear congressional policy that Title VII cases were to be adjudicated as promptly as possible. To consider state contract and tort claims in a Title VII action would conflict with this policy. Such claims would expand the scope of issues to be resolved and support a right to a jury trial, the exercise of which would confuse and delay determination of a Title VII claim and possibly prevent a court from expediting the Title VII case by referring it to a master. 510 F.Supp. at 725–26.

In the very recent case of *Bennett v. Southern Marine Management Co., supra,* the United States District Court for the Middle District of Florida essentially adopted the *Lim* reasoning in holding that hearing certain state claims as pendent claims in a Title VII suit would conflict with a congressional policy underlying Title VII. *See Bennett,* 531 F.Supp. at 117–18. This court is also persuaded by the reasoning of *Lim, Kiss,* and *Bennett* that the state law claims in the instant case are inconsistent with and would tend to subvert Title VII policies, rights, and remedies. The plaintiff herein appended one contract and three tort claims to her Title VII action. These state causes support not only a right to a jury trial, prohibited under Title VII, *see Slack v. Havens,* 522 F.2d 1091, 1094 (9th Cir.1975); *Smith v. Hampton Training School for Nurses,* 360 F.2d 577, 581 n. 8 (4th Cir.1966), *approved by implication, Great American Federal S. & L. Association v. Novotny,* 442 U.S. 366, 375 & n. 19, 99 S.Ct. 2345, 2350 & n. 19, 60 L.Ed.2d 957 (1979), but also provide a basis for compensatory and punitive damages which is in direct conflict with the congressional intent of only "equitable" relief under Title VII. *See United States v. Long,* 537 F.2d 1151, 1154 (4th Cir.1975); *Robinson v. Lorillard Corp.,* 444 F.2d 791, 802 (4th Cir.), *cert. dismissed,* 404 U.S. 1006,

92 S.Ct. 573, 30 L.Ed.2d 665 (1971). In addition, the four pendent claims herein, at least in theory, impede the court's ability to carry out its statutory duty "to assign the case for hearing at the earliest practicable date and to cause the case to be in every way expedited." 42 U.S.C. § 2000e–5(f)(5).

The court discerns yet another reason why it is without jurisdiction as to defendants White and Rabon and the pendent claims asserted against them. As the court in *Kiss v. Tamarac Utilities, Inc.,* 463 F.Supp. at 953, stated, in enacting Title VII, Congress expressed a public policy favoring cooperation and voluntary compliance as the preferred means for eliminating discrimination in the area of employment opportunities. An aggrieved party is required to proceed through the conciliation process of the Equal Employment Opportunity Commission prior to bringing a lawsuit, and thus, the joining of parties who have not had the opportunity to participate in this process, because they have not been named as respondents in the EEOC charge, frustrates this congressional policy. Since White and Rabon were not named as respondents in the charge filed by plaintiff with the EEOC, and have not been involved in any conciliation process, their joinder in this suit runs contrary to the expressed intent of Congress. *See Kiss,* 463 F.Supp. at 954.

■ In sum, the court concludes that Title VII and its judicial history reveal an implied congressional command negating pendent jurisdiction over the particular nonfederal claims set forth in plaintiff's second amended complaint. *See Lim, supra; Bennett, supra;* and *Kiss, supra.* In so concluding, the court recognizes that other lower federal courts, as pointed out by plaintiff, have upheld pendent jurisdiction in Title VII actions without ever acknowledging the *Bennett-Lim-Kiss* line of decisions. *See Guyette v. Stauffer Chemical Co.,* 518 F.Supp. 521 (D.N.J.1981); *Kyriazi v. Western Electric Co.,* 476 F.Supp. 335 (D.N.J.1979); *Palazon v. KFC National Management Co.,* 28 FEP Cas. 458 (N.D.Ill. 1981). These cases notwithstanding, the

court remains of the opinion that the reasoning of *Bennett-Lim-Kiss* is persuasive and chooses to follow that line of decision.

■ Even assuming that the court were not to follow *Bennett-Lim-Kiss* and that the *power* to hear plaintiff's state claims existed, it does not follow necessarily that the court *must* hear those claims. (emphasis added). The exercise of pendent jurisdiction is committed to the informed discretion of the district court. *See United Mine Workers v. Gibbs,* 383 U.S. at 726, 86 S.Ct. at 1139; *Hall v. Tawney,* 621 F.2d 607, 615 (4th Cir.1980).

■ The Supreme Court in *Gibbs* identified several factors which militate in favor of dismissing pendent claims. In the Court's view, discretion to dismiss state claims should be exercised (1) when divergent state or federal theories of relief are likely to cause jury confusion; (2) when state issues are found to predominate in terms of proof, scope of issues raised, or comprehensiveness of remedy sought; (3) when a surer-footed reading of the applicable law can be obtained in state court; or (4) when considerations of judicial economy, convenience, and fairness for the litigants are not present. *See* 383 U.S. at 726–27, 86 S.Ct. at 1139. Assuming power to adjudicate, consideration of these factors would compel the court to decline to exercise pendent jurisdiction in this case.

As stated, plaintiff's state and federal claims are quite divergent, as between each other and among the state claims themselves. The three state contract-based claims are founded on two separate oral agreements [3] which allegedly came into being as a result of different sets of conversations that occurred during the spring, summer, and fall of 1980. The event which gives rise to the Title VII claim is the failure to reinstate, which occurred in late January 1981. Although the failure to reemploy also constitutes the alleged breach under plaintiff's contract-based claims, and forms the predicate for the infliction of

emotional distress cause, the state claims overlap the federal claim and each other only to this extent.

Moreover, while the mere fact of refusal to reinstate may be legally significant under the contract claims, and defendants' intentional acts to cause breach may be significant to the tortious interference claims, it is Pioneer's allegedly unlawful and discriminatory motivation in failing to reemploy, rather than the failure to reinstate itself, that is significant for purposes of the Title VII claim. Lastly, the allegedly extreme or outrageous type conduct which underlies the cause for intentional infliction of emotional distress is not in any way involved in the question of failure to reinstate because of pregnancy. The infliction of emotional distress claim also differs substantially from the other state causes.

The court believes that plaintiff's state claims are so dissimilar factually and legally from each other and with respect to the Title VII claim that there would be a substantial likelihood of jury confusion were the state and federal claims tried together. *See Mazzare v. Burroughs Corp.,* 473 F.Supp. 234, 241 (E.D.Pa.1979); *Madery v. International Sound Technicians,* 79 F.R.D. at 158; *Kennedy v. Mountain States Telephone & Telegraph Co.,* 449 F.Supp. 1008, 1011 (D.Colo.1978). It is also apparent to the court, for reasons which have already been indicated, that were the state claims tried with the Title VII claim they would substantially predominate in terms of the scope of issues and proof, and in regard to comprehensiveness of remedies sought. *See Hughes v. Marsh Instrument Co.,* 28 FEP Cas. 702, 703 (N.D.Ill.1981); *Kiss,* 463 F.Supp. at 954; *Cf. Guyette v. Stauffer Chemical Co.,* 518 F.Supp. at 524–25 (where because plaintiff's sexual harassment theory under Title VII bore distinct similarities to, and to a large extent arose out of, the several tort causes alleged, the court did not believe the state issues would substantially predominate); *Palazon v. KAF National Management Co.,* 28 FEP Cas. 458, 460

---

**3.** All of plaintiff's state claims except the cause for the tort of outrage or intentional infliction of emotional distress are based directly or indirectly on alleged oral contracts.

736

(N.D.Ill.1981) (where the Title VII claim encompassed most of the factual issues presented by the single pendent state claim, the state issues did not predominate).

It is also the court's belief that many of plaintiff's pendent claims would involve the court in needless decisions of state law which could be decided on surer-footing by a state court. That the tort of intentional infliction of emotional distress has only recently been recognized in South Carolina, *see Ford v. Hutson,* 276 S.C. 157, 276 S.E.2d 776 (1981), is reason to decline to exercise pendent jurisdiction over that cause. *Mazzare v. Burroughs Corp.,* 473 F.Supp. at 241; *see Sanders v. Duke University,* 538 F.Supp. 1143, 1148 (M.D.N.C.1982). From the paucity of South Carolina decisions, it appears that even the claims based on oral agreements relating to employment involve several largely unexplored questions of state law. *See Lim,* 510 F.Supp. at 276.

Finally, the plaintiff has made virtually no showing that the considerations of judicial economy, convenience, and fairness to the litigants would be enhanced by the court's exercise of pendent jurisdiction. *See Madery v. International Sound Technicians,* 79 F.R.D. at 157–58; *Mazzare v. Burroughs Corp.,* 473 F.Supp. at 241. The largely different and predominant legal and factual issues involved in plaintiff's state claims, as compared with her Title VII claim, would unnecessarily confuse the issues, complicate the matters of proof, and ultimately enlarge the entire scope of the trial. Therefore, for this additional reason, the court would likely not have exercised its discretion to hear the plaintiff's pendent state law claims, even if it had determined that the power to do so existed.

For the foregoing reasons, plaintiff's pendent claims must be dismissed because the court is without power to hear them and, assuming the existence of such power, the court as a matter of discretion declines to exercise jurisdiction.

IT IS, THEREFORE, ORDERED that all of plaintiff's claims except the Title VII claim are dismissed from this action without prejudice.