Sophia **GLEZOS**

v.

**AMALFI RISTORANTE ITALIANO, INC. and Moshen Abrishamkar.**

**Civ. No. Y–86–1568.**

United States District Court, D. Maryland.

Jan. 20, 1987.

Harvey A. Epstein, Towson, Md., for plaintiff.

Ernest C. Tucker, Chevy Chase, Md., for defendant Amalfa Ristorante Italiano, Inc.

Harry C. Tsitouris, Chevy Chase, Md., for defendant Moshen Abrishamkar.

## MEMORANDUM

JOSEPH H. YOUNG, District Judge.

Sophia Glezos filed suit against her former employers alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and Maryland common law. Her request for a jury trial is opposed by defendants. Defendants argue that Title VII provides for equitable relief only and therefore does not afford plaintiff the right to a jury trial. While this may be true, one of plaintiff's pendent state law claims gives rise to monetary relief, and she is entitled to a trial by jury on that issue.

## I. *Factual Background*

In August 1984, defendant Moshen Abrishamkar hired plaintiff to work as a waitress at Amalfi Ristorante Italiano, Inc. ("Amalfi's") in Montgomery County, Maryland. As manager of Amalfi's, Abrishamkar was plaintiff's supervisor and boss. On numerous occasions, he allegedly asked plaintiff to have sexual relations with him and made other remarks of a sexual nature. Plaintiff refused defendant's requests and attempted to ignore his advances. Defendant is alleged to have persisted in soliciting sexual favors and making sexual advances. In addition, plaintiff alleges she was assigned to the least favorable tables and was the victim of a scheme of further harassment conducted by other Amalfi employees.

In May 1985, Abrishamkar purportedly told plaintiff that if she did not perform oral sex for him once a week, she would be removed from the Saturday night schedule. Saturday was the most lucrative shift. Plaintiff refused defendant's demand, and within one week, Abrishamkar removed plaintiff from the Saturday night shift. Shortly thereafter, plaintiff felt compelled to resign due to sexual discrimination and harassment. She filed a complaint with the Montgomery County Human Relations Commission in July 1985, and the Commission issued its determination the following September. Upon review of this determination, the Equal Employment Opportunity Commission issued plaintiff a "Notice of Right to Sue" in February 1986.

Plaintiff filed suit on May 19, 1986. Counts I, II and V of her complaint set forth claims of sex discrimination in violation of Title VII. Count I alleges sexual harassment in the form of a hostile and offensive working environment. Count II alleges sexual harassment in the conditioning of employment benefits on sexual favors. And Count V sets forth a claim for constructive discharge. Counts III and IV allege intentional infliction of emotional distress and constructive discharge in violation of Maryland common law.

## II. *Right to a Jury Trial*

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer to "discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's ... sex...." 42 U.S.C. § 2000e–2. Upon finding a violation of this provision, a court may order injunctive relief and "such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay ..., or any other equitable relief as the court deems appropriate." 42 U.S.C. § 2000e–5.

■ Compensatory or punitive damage awards are not available under Title VII. *Henson v. City of Dundee,* 682 F.2d 897, 905 (11th Cir.1982); *Russell v. American Tobacco Co.,* 528 F.2d 357, 366 (4th Cir. 1975), *cert. denied,* 425 U.S. 935, 96 S.Ct. 1667, 48 L.Ed.2d 176 (1976). Because the Act authorizes only equitable remedies, courts have consistently held that neither party has a right to a jury trial. *Lincoln v. Board of Regents,* 697 F.2d 928, 934 (11th Cir.), *cert. denied,* 464 U.S. 826, 104 S.Ct. 97, 78 L.Ed.2d 102 (1983); *Slack v. Havens,* 522 F.2d 1091, 1094 (9th Cir.1975).

■ When a case contains both legal and equitable claims, however, the right to trial by jury must be preserved. *Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 473, 82 S.Ct. 894, 897, 8 L.Ed.2d 44 (1962); *Hodgin v. Jefferson,* 447 F.Supp. 804, 810 (D.Md.1978) (Title VII claims combined with § 1985 and Equal Pay Act claims). Plaintiff Glezos asserts two state law claims which give rise to monetary relief. If it is appropriate for this Court to exercise pendent jurisdiction over those claims, then plaintiff's request for a jury trial will be granted.

### A. *Authority to Hear the State Law Claims*

The test for pendent jurisdiction, as set forth in *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), requires the court to determine

first, whether it has authority over the state law claims, and second, whether the court in its discretion should entertain them. Authority exists if the federal claim has "substance sufficient to confer subject matter jurisdiction on the court," and the state and federal claims "derive from a common nucleus of operative fact" so that the plaintiff "would ordinarily be expected to try them all in one judicial proceeding." 383 U.S. at 725, 86 S.Ct. at 1138.

Plaintiff's Title VII claims clearly are of sufficient substance to confer jurisdiction on this Court. Her state and federal claims arise from the same acts of sexual harassment allegedly perpetrated by Abrishamkar, thus they derive from a common nucleus of operative fact. Accordingly, under *Gibbs*, this Court has authority to hear plaintiff's pendent claims.

Several circuits have concluded, however, that *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978), added another level of analysis to the question of whether a federal court has authority to entertain state law claims. *See Jones v. Intermountain Power Project*, 794 F.2d 546, 551–52 (10th Cir.1986); *Ambromovage v. United Mine Workers*, 726 F.2d 972, 989–91 (3d Cir. 1984); *United States ex rel. Hoover v. Franzen*, 669 F.2d 433, 440 (7th Cir.1982); and *Ortiz v. United States*, 595 F.2d 65, 71 n. 9 (1st Cir.1979) (dictum).

The Supreme Court in *Owen* ruled:

... a finding that federal and nonfederal claims arise from a "common nucleus of operative fact," the test of *Gibbs*, does not end the inquiry into whether a federal court has power to hear the nonfederal claims along with the federal ones. Beyond this constitutional minimum, there must be an examination of the posture in which the nonfederal claim is asserted and of the specific statute that confers jurisdiction over the federal claim, in order to determine whether "Congress in [that statute] has ... expressly or by implication negated" the exercise of jurisdiction over the particular nonfederal claim.

437 U.S. at 373, 98 S.Ct. at 2402 (quoting *Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976)). Assuming without deciding that *Owen* adds a third level of inquiry to the pendent jurisdiction analysis, this Court concludes that Congress did not intend to negate pendent jurisdiction in cases arising under Title VII.

The language of the jurisdictional grant in Title VII, that federal district courts "shall have jurisdiction of actions brought under this subchapter," does not expressly indicate Congressional intent with respect to pendent jurisdiction. 42 U.S.C. § 2000e–5(f)(3).

Some courts have argued that the structure of the Act implicitly indicates that Congress intended to negate pendent jurisdiction in Title VII cases. They note that Congress wanted such cases "to be in every way expedited," 42 U.S.C. § 2000e–5(f)(5), and that joinder of state law claims would conflict with that goal. Specifically, delay might be caused by discovery and proof regarding damages available under state law but not under Title VII. *See Frye v. Pioneer Logging Machinery, Inc.*, 555 F.Supp. 730, 734 (D.S.C.1983); *Bennett v. Southern Marine Management Co.*, 531 F.Supp. 115, 117 (M.D.Fla.1982); and *Jong-Yul Lim v. Int'l Inst. of Metro. Detroit*, 510 F.Supp. 722, 725 (E.D.Mich.1981). Furthermore, they contend, because Title VII provides for equitable relief only, Congress impliedly expressed a policy disfavoring the award of compensatory and punitive damages in employment discrimination cases. Joinder of state law claims under which a plaintiff may be entitled to such damages directly conflicts with this Congressional intent of limited relief. *See Frye, supra*, 555 F.Supp. at 733; *Bennett, supra*, 531 F.Supp. at 117; and *Lim, supra*, 510 F.Supp. at 725.

This Court finds such arguments unpersuasive. Congress has twice rejected amendments making Title VII an exclusive remedy for employment discrimination. *See Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 459, 95 S.Ct. 1716, 1719–20, 44 L.Ed.2d 295 (1975). The Supreme

Court has held that Title VII claims may be joined with other federal claims for discrimination even though the other federal claims provide for a jury trial and a full range of legal as well as equitable remedies. *Johnson, supra,* 421 U.S. at 459–60, 95 S.Ct. at 1719–20. Pendent state claims affording a jury trial and legal remedies would cause no more delay than conjoined federal claims. Moreover, the Supreme Court has clearly found that awarding legal remedies for joined federal claims does not contravene Congressional intent under Title VII. Thus, the awarding of monetary relief for pendent state claims is little reason to find implicit Congressional intent to negate pendent jurisdiction.

"When Title VII is construed together with the long-standing presumption in favor of pendent jurisdiction and district courts' broad discretion to assume jurisdiction over pendent claims, [there is] nothing unclear about Title VII. Against the backdrop of the volume of pendent jurisdiction cases, one would be surprised if Congress did not deal expressly with the issue if it intended to change the general law. It did not do so here." *Jones v. Intermountain Power Project,* 794 F.2d 546, 552 (10th Cir.1986).

█ Accordingly, this Court concludes that it has the authority to hear plaintiff Glezos' state law claims.

## B. *Exercising Discretion*

█ The second prong of the *Gibbs* test focuses on the court's discretion to exercise its authority. Pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. The justification for pendent jurisdiction lies in considerations of judicial economy, convenience and fairness to litigants. A federal court should consider (a) whether these factors would be served by trying the federal and state claims in a single proceeding; (b) whether the pendent claims present unsettled questions of state law; (c) whether the state issues predominate in terms of proof, scope of issues raised, or comprehensiveness of remedy sought; and (d) whether jury confusion is likely to result from the divergent theories of relief. *Gibbs, supra,* 383 U.S. at 726–27, 86 S.Ct. at 1139–40.

## The State Law Claims

The issues of state law raised by plaintiff are well settled by the Maryland courts. In order to prevail on her claim of intentional infliction of emotional distress, plaintiff must prove that:

1. defendant's conduct was intentional or reckless;

2. the conduct was extreme and outrageous;

3. a causal connection between the wrongful conduct and the emotional distress; and

4. emotional distress of a severe nature. *Harris v. Jones,* 281 Md. 560, 566, 380 A.2d 611 (1977). A defendant's conduct is intentional or reckless "where he desires to inflict severe emotional distress, and also where he knows that such distress is certain, or substantially certain, to result from his conduct; or where the defendant acts recklessly in deliberate disregard of a high degree of probability that the emotional distress will follow." 281 Md. at 567, 380 A.2d 611. Extreme and outrageous conduct is conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Id.* "The extreme and outrageous character of the defendant's conduct may arise from his abuse of a position ... which gives him actual or apparent authority over [another person], or power to affect [that person's] interests." 281 Md. at 569, 380 A.2d 611. If plaintiff proves her claim, she may be awarded compensatory and punitive damages.

A claim for constructive discharge, as alleged in Count IV of plaintiff's complaint, is also recognized under Maryland common law. *Beye v. Bureau of Nat'l Affairs,* 59 Md.App. 642, 653, 477 A.2d 1197, *cert. denied,* 301 Md. 639, 484 A.2d 274 (1984). However, when a statutory scheme provides a comprehensive remedy for an inju-

ry, that statutory scheme preempts application of the general common law. *White v. Prince George's County*, 282 Md. 641, 649, 387 A.2d 260 (1978). In this case, Article 49B of the Maryland Code provides the exclusive state remedy for a constructive discharge claim based upon sex discrimination in employment. *See Soley v. State Comm'n on Human Relations*, 277 Md. 521, 526, 356 A.2d 254 (1976) (plaintiff must exhaust administrative remedies under Md. Ann.Code Art. 49B); *Dillon v. Great Atl. & Pac. Tea Co.*, 43 Md.App. 161, 403 A.2d 406 (1979) (no private right of action under Article 49B). *Cf. Moniodis v. Cook*, 64 Md.App. 1, 12, 494 A.2d 212 (1985) (statutory remedy not available under Md.Ann. Code art. 100, § 95, therefore plaintiffs allowed to proceed with a common law action for constructive discharge).

In the instant case, plaintiff pursued both state and federal statutory remedies, and she received notice of her right to sue from the EEOC. She asserts a claim for constructive discharge under Title VII as well as under Maryland common law. As Title VII represents her exclusive remedy for this claim, she cannot proceed with a common law action for constructive discharge. Accordingly, this Court will *sua sponte* dismiss Count IV of plaintiff's complaint.

### Scope of the State and Federal Issues

The state law issues do not predominate in this case. Plaintiff has set forth three federal claims. Count I alleges sexual harassment in the creation of a hostile and offensive working environment. In order to prevail on this claim, plaintiff must prove the following elements:

1. She belongs to a protected group.

2. She was subjected to unwelcome sexual harassment.

3. The harassment complained of was based upon sex.

4. The harassment complained of affected a "term, condition, or privilege" of employment.

5. The employer knew or should have known of the harassment, and took no effective remedial action.

*Henson v. City of Dundee*, 682 F.2d 897, 903–05 (11th Cir.1982). *See also Katz v. Dole*, 709 F.2d 251, 256 (4th Cir.1983).

Count II of plaintiff's complaint alleges that her employer demanded sexual consideration as a *quid pro quo* for job benefits. To prevail upon this claim, plaintiff must prove the first three elements outlined above, as well as the following: (4) Her reaction to the harassment complained of affected tangible aspects of her compensation, terms, conditions, or privileges of employment; and (5) Respondeat superior: an employer is generally liable for the discriminatory actions of its supervisors which affect an employee's tangible job benefits. *Henson, supra*, 682 F.2d at 909–10. *See also Meritor Sav. Bank v. Vinson*, —— U.S. ——, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). In order to prevail on her constructive discharge claim set forth in Count V, plaintiff must prove that her working conditions became so intolerable that she was forced into an involuntary resignation. *Bourque v. Powell Elect. Manuf. Co.*, 617 F.2d 61, 65 (5th Cir.1980).

A comparison of the elements of plaintiff's state and federal claims reveals that plaintiff's claim for intentional infliction of emotional distress does not predominate over her Title VII claims in terms of proof or scope of issues raised. Indeed, the facts required to prove each of the state law elements overlap the federal claims to a significant degree. Although plaintiff's state law remedies may be more comprehensive in terms of monetary relief, this is the only factor which counsels against pendent jurisdiction and, as such, is outweighed by the considerations favoring exercise of this Court's authority over the state law issues. *See Palazon v. KFC Nat'l Management Co.*, 28 F.E.P.Cas. 458, 460 (N.D.Ill.1981) (where Title VII claims encompassed most of the factual issues presented by the pendent state claim, the state issues did not predominate and pendent jurisdiction was appropriate).

 Considerations of judicial economy, convenience and fairness to the litigants weigh heavily in favor of exercising pendent jurisdiction in this case. As discussed above, the evidence necessary to prove sexual harassment overlaps to a significant degree with that necessary to prove intentional infliction of emotional distress. _See Guyette v. Stauffer Chemical Co.,_ 518 F.Supp. 521, 525 (D.N.J.1981) (pendent jurisdiction allowed where Title VII sexual harassment claims joined with state tort claims). Because Title VII claims can be filed only in federal court, _Bradshaw v. General Motors Corp.,_ 805 F.2d 110, 112 (3d Cir.1986); _Valenzuela v. Kraft, Inc.,_ 739 F.2d 434, 436 (9th Cir.1984) a refusal to exercise pendent jurisdiction would require substantially duplicative pleadings and proceedings in federal and state courts. Witnesses would be forced to testify twice to essentially the same facts. And the parties would have the unnecessary burden of proceeding simultaneously in two courts. _See Phillips v. Smalley Maintenance Services, Inc.,_ 711 F.2d 1524, 1531 (11th Cir.1983) (pendent jurisdiction upheld where sexual harassment claims coupled with state tort claims); _Frykberg v. State Farm Mut. Auto. Ins. Co.,_ 557 F.Supp. 517 (W.D.N.C. 1983) (pendent jurisdiction upheld where sexual harassment claim brought with state law claim for intentional infliction of emotional distress); and _Goodman v. Bd. of Trustees of Community College,_ 511 F.Supp. 602, 605 (N.D.Ill.1981) (pendent jurisdiction appropriate where sex discrimination combined with contract claims).

For the foregoing reasons, this Court will exercise its discretion to hear plaintiff's state law claim.

### III. _Conclusion_

This case encompasses both legal and equitable claims, therefore plaintiff's request for a jury trial is granted. As Title VII is plaintiff's exclusive remedy for a claim of constructive discharge due to sex discrimination, Count IV of plaintiff's complaint is dismissed.