Charles F. PARLATO; Jackie Parlato, his wife, Plaintiffs–Appellants,

v.

ABBOTT LABORATORIES, a body corporate, Defendant–Appellee.

No. 87–1762.

United States Court of Appeals, Fourth Circuit.

Argued May 5, 1988.

Decided June 30, 1988.

Benjamin Lipsitz, Baltimore, Md., for plaintiffs-appellants.

Harold D. Murry, Jr. (Robert P. Reznick, Clifford & Warnke, Washington, D.C., Paul Mark Sandler, Freishtat & Sandler, Baltimore, Md., Catherine A. Sazdanoff, Office of General Counsel, Abbott Laboratories, North Chicago, Ill., on brief) for defendant-appellee.

Before PHILLIPS and SPROUSE, Circuit Judges, and KAUFMAN, Senior United States District Judge for the District of Maryland, sitting by designation.

**PER CURIAM.**

Appellants, Charles and Jackie Parlato (the Parlatos), seek reversal of the district court's grant of summary judgment in favor of defendant-appellee, Abbott Laboratories (Abbott). For the reasons stated in this opinion, we affirm.

## I.

This case involves a wrongful discharge suit filed by Charles Parlato against his former employer, Abbott, a manufacturer of pharmaceutical products. From December 1960 until October 1982, Parlato was employed by Abbott in an at will capacity, and had held the position of field sales representative for Abbott from 1969 until his termination. In early October 1982,[1] Abbott fired Parlato, giving as its reasons Parlato's violation of company procedures, insubordination, and unsatisfactory performance on the job. Parlato, a white male, was fifty-five years old at the time he was discharged, and was replaced by a black male several years his junior.

On February 17, 1983, Parlato filed a complaint with the Maryland Commission on Human Relations (Commission), claiming that Abbott had fired him because of his age and race, and had thereby violated Article 49B of the Annotated Code of Maryland. Md.Ann.Code art. 49B, § 16(a) (1986). On October 11, 1983, after the Commission had investigated the matter, it issued its written determination that there was no probable cause to believe that Abbott's discharge of Parlato was discriminatory in nature.[2]

On October 3, 1985, Parlato and his wife filed suit against Abbott in the Circuit Court for Anne Arundel County, Maryland, asserting a claim for wrongful discharge on two grounds: (1) the discharge violated

---

1. The exact date in October 1982 upon which Parlato was terminated is in dispute. For the purpose of calculating the application of the statute of limitations, the district court adopted October 4, 1982 as the date upon which Parlato's employment relationship with Abbott ended. However, the date is not material at this time because the issue involved in this appeal does not relate to the question of limitations.

2. On November 10, 1983, Parlato filed an Application for Reconsideration by the Commission. Abbott asserts that the application was subsequently denied. Appellee's Br. at 3. However, the record does not affirmatively indicate that any action has yet been taken. See J.A. 22 note; Appellant's Br. at 7.

Maryland and federal public policy against age and race discrimination; and (2) the discharge resulted from Parlato's knowledge of Abbott's alleged antitrust violations and Abbott's fear that Parlato would "blow the whistle" on those activities. The Parlatos also claimed a loss of consortium stemming from the wrongful discharge.

On November 13, 1985, Abbott appropriately removed this case to the United States District Court for the District of Maryland.[3] On May 5, 1987, the district court dismissed Parlato's claim for common law wrongful discharge based upon allegations of race and age discrimination because Article 49B provides an exclusive statutory remedy for those alleged injuries.[4] At that time, the district court denied Abbott's motion for summary judgment with respect to the remainder of the Parlatos' claims. Subsequently, however, on October 27, 1987, the district court granted summary judgment on the Parlatos' remaining claims because there was no evidence that Abbott had violated any antitrust laws, or that Charles Parlato's discharge was motivated by knowledge of such alleged violations. In this appeal, the Parlatos challenge only the district court's May 5, 1987 dismissal of the race and age discrimination claims.

## II.

In a ground-breaking decision in 1981, the Court of Appeals of Maryland "recognize[d] a cause of action for abusive [or wrongful] discharge by an employer of an at will employee when the motivation for the discharge contravenes some clear mandate of public policy." *Adler v. American Standard Corp.*, 291 Md. 31, 47, 432 A.2d 464, 473 (1981).[5] There is no question that Parlato's allegations of race and age discrimination, when taken as true, violate the public policy of Maryland as expressed in Md.Ann.Code art. 49B, § 16(a)(1) (1986), which explicitly prohibits discrimination based on age and race. However, Article 49B itself does not create a private cause of action. Furthermore, Article 49B's administrative remedy has been held to preclude quests for declaratory relief and monetary damages, albeit in cases which preceded *Adler* and did not discuss the possibility of a wrongful discharge claim by an at will employee. *See Soley v. State of Maryland Commission on Human Relations*, 277 Md. 521, 526–28, 356 A.2d 254, 257–58 (1976); *Dillon v. Great Atlantic and Pacific Tea Co., Inc.*, 43 Md.App. 161, 166–67, 403 A.2d 406, 409 (1979). In this appeal, the issue presented is whether, in the wake of *Adler*, a plaintiff proceeding under Maryland law can base a common law claim of wrongful discharge on the violation of a public policy embodied in Article 49B, given that Article 49B itself creates a specific procedure and remedy for the redress of the alleged wrongs.[6]

3. The Parlatos are citizens of Maryland, Abbott is an Illinois corporation with its principal place of business in that state, and the amount in controversy exceeds $10,000. Accordingly, diversity jurisdiction exists.

4. In so doing, the district court acted upon Abbott's alternative motions for dismissal and for summary judgment. With regard to Parlato's allegations of race and sex discrimination, no appropriate Fed.R.Civ.P. 56 material was filed either in support of, or in opposition to, Abbott's motion. Therefore, the district court's May 5, 1987 decision involving those portions of Parlato's complaint was technically a grant of Abbott's motion to dismiss pursuant to Fed.R.Civ. P. 12(b)(6) rather than a grant of summary judgment pursuant to Fed.R.Civ.P. 56. However, that technical distinction has no material impact on the outcome of this appeal, for even if Parlato's allegations of race and age discrimination are taken as true, they do not sustain his

tort action for wrongful discharge under Maryland law.

5. The terms "abusive discharge" and "wrongful discharge" are synonymous. *Adler*, 291 Md. at 36 n. 2, 432 A.2d at 467 n. 2.

6. In his complaint, Parlato alleges that Abbott's actions violate federal as well as state public policy, specifically the policy against age discrimination embodied in the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–34 (1982 & Supp. III 1985), and the policy against race discrimination expressed in Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–20003–17 (1982). Although the ADEA and Title VII permit a plaintiff to pursue a private cause of action under certain circumstances, *see* 29 U.S.C. §§ 626(c)–(d); 42 U.S.C. § 2000e–5(f)(1), Parlato has not filed any claim under either of those two statutes. Furthermore, despite the complaint's reference to feder-

Even though the Court of Appeals of Maryland has not decided the precise question before us, the Court of Special Appeals of Maryland has recently held that a common law claim of wrongful discharge cannot be premised solely on a violation of Article 49B. In *Makovi v. Sherwin-Williams Co.*, 75 Md.App. 58, 540 A.2d 494 (1988), plaintiff, an at will employee of the defendant paint company, was fired approximately two months after she learned that she was pregnant. Plaintiff sued the company for wrongful discharge, claiming that her termination violated the policy against sex discrimination found in Md. Ann.Code art. 49B, § 16(a), and Title VII, 42 U.S.C. § 2000e-2. *Makovi*, 75 Md.App. at 59-60, 540 A.2d at 494-95.[7]

Writing for the Court of Special Appeals, Judge Wilner framed the issue as "whether a common law tort action for wrongful discharge, founded on an allegation that the discharge was prompted by and amounted to unlawful employment discrimination by reason of sex, will lie when there is a specific statutory procedure and remedy for the redress of that kind of conduct." *Makovi*, 75 Md.App. at 60, 540 A.2d at 495. In concluding that no cause of action "lie[s] under that circumstance," *id.*, Judge Wilner reviewed the provisions of both Title VII and Article 49B, and also traced the development of the tort of wrongful dis-

charge under Maryland law. *Id.* at 60–65, 540 A.2d at 495–97. He then noted:

> In point of fact, as Ms. Makovi candidly acknowledges, most of the courts that have considered the question have come to the view that a wrongful discharge action will not lie where a remedy is available under 42 U.S.C. § 2000e–5 or its State counterparts, including art. 49B, §§ 11 and 12. Four judges of the U.S. District Court for the District of Maryland have so held. See *Glezos v. Amalfi Ristorante Italiano, Inc.*, 651 F.Supp. 1271 (D.Md.1987, J. Young) (sex discrimination); *Chekey v. BTR Realty, Inc.*, 575 F.Supp. 715 (D.Md.1983, J. Miller) (age discrimination); *MacGill v. Johns Hopkins Univ.*, 33 F.E.P. Cases 1254 (D.Md. 1983, J. Ramsey) (age discrimination); *Vasques v. National Geographic Society*, 34 F.E.P. Cases 295 (D.Md.1982, J. Jones) [available on WESTLAW, 1982 WL 1728] (national origin).
>
> Although we do not necessarily subscribe to all of the reasons cited in these cases, we do believe that the end conclusion is a correct one.

*Id.* at 65–66, 540 A.2d at 497–98 (footnotes omitted).[8]

We believe that *Makovi* is on all fours with the case before us, and that under its holding the Parlatos' claims against Abbott cannot succeed.[9] While we are not re-

---

al public policy, in their presentations to the district court and to this court Parlato and Abbott focused exclusively on the relationship under Maryland law between Article 49B and a common law claim for wrongful discharge. Accordingly, we do not dwell in this opinion on the federal statutory remedies available to Parlato. In any event, however, the public policies expressed in Article 49B are in substance duplicative of the policies expressed in its federal counterparts. *See, e.g., Glezos v. Amalfi Ristorante Italiano, Inc.*, 651 F.Supp. 1271, 1275–76 (D.Md.1987).

7. Before filing her wrongful discharge claim, the plaintiff in *Makovi* had filed a claim with the EEOC, which later found "no reasonable cause to believe that her allegation was true." *Makovi*, 75 Md.App. at 60, 540 A.2d at 495. Although the EEOC issued plaintiff a right-to-sue letter, plaintiff had apparently "declined to pursue that remedy." *Id.* Substantively, the same scenario has occurred in this case. *But see* note 9, *infra.*

8. While Judge Wilner agreed with the holdings in *Glezos, Chekey, MacGill,* and *Vasques,* he differed with the views expressed in certain of those opinions as to the meaning of *Soley v. State of Maryland Commission on Human Relations,* 277 Md. 521, 356 A.2d 254 (1976). *See Makovi,* 75 Md.App. at 66 n. 3, 540 A.2d at 498 n. 3.

9. While it is true that *Makovi* involves allegations of sex discrimination rather than the claims of age and race discrimination present in this case, that difference is immaterial. Indeed, *Makovi*'s reliance on cases involving age discrimination, including those from the District of Maryland, *see* 75 Md.App. at 65–66 & n. 2, 540 A.2d at 497–98 & n. 2, suggests that *Makovi* applies to *all* wrongful discharge claims which are based solely on the violation of public policies expressed in Article 49B and/or analogous federal statutes, so long as those statutes provide for remedies independent of any common law action.

quired to follow decisions of intermediate appellate courts like the Court of Special Appeals of Maryland, such decisions are "dat[a] for ascertaining state law which [are] not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *West v. American Telephone & Telegraph Co.*, 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940); *see also Commissioner of Internal Revenue v. Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 1782 18 L.Ed.2d 886 (1967); *Sanderson v. Rice*, 777 F.2d 902, 905 (4th Cir.1985), *cert. denied*, 475 U.S. 1027, 106 S.Ct. 1226, 89 L.Ed.2d 336 (1986). In the light of the great number of cases, including those from the District of Maryland, which accord with the decision in *Makovi*, we do not believe that the Court of Appeals of Maryland "would decide otherwise." Accordingly, we hereby affirm the district court's dismissal of the Parlatos' claims.

AFFIRMED.