Edda DUVA, Plaintiff,

v.

BRIDGEPORT TEXTRON, Gordon Jervis, Joseph Weber, Thomas Moran and Gus Roth, Defendants.

Civ. A. 84–4840.

United States District Court,
E.D. Pennsylvania.

Dec. 11, 1985.

Blake C. Marles, Thomas E. Weaver, Weaver, Mosebach, Piosa, Hixson, Wallitsch & Marles, Allentown, Pa., for plaintiff.

John E. Krampf, Stephanie E. Middleton, Morgan, Lewis & Bockius, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

DITTER, District Judge.

Edda Duva filed a five-count complaint against her former employer, Bridgeport Textron (Textron), and several employees of Textron including Gordon Jervis, the personnel manager; Thomas Moran, the general supervisor; Joseph Weber, a supervisor; and Gus Roth, a non-supervisory employee. Plaintiff first purports to state a cause of action against all defendants pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* She alleges that defendants discriminated against her on the basis of her sex and that this discrimination constituted a constructive discharge. Plaintiff's remaining claims, which plaintiff contends are pendent to the Title VII claim, are brought pursuant to state tort law. Defendants have moved to dismiss the Title VII claims against the individual defendants, to dismiss the pendent state claims against all defendants, and to strike both plaintiff's claim for punitive damages and plaintiff's jury trial demand. For reasons that follow, this motion will be granted.

Defendants first contend that plaintiff's Title VII claims against Jervis, Moran, Roth, and Weber should be dismissed because these individuals are not persons against whom a Title VII action may be maintained.

42 U.S.C. § 2000e–2(a)(1) provides in part that it is an unlawful employment practice

for an "employer" to discriminate on the basis of sex. Employer is defined to include "a person engaged in an industry affecting commerce ..., and an *agent* of such a person...." *Id.* § 2000e (emphasis added). The question, therefore, is whether the individual defendants may be considered agents of Brideport Textron.

▮ In light of the Act's remedial purpose, the term employer should be given a liberal interpretation, extending to individuals who significantly control access to employment. *See Baker v. Stuart Broadcasting Co.*, 560 F.2d 389, 391 (8th Cir. 1977); *Bell v. Brown*, 557 F.2d 849, 853 (D.C.Cir.1977); *Guyette v. Stauffer Chem. Co.*, 518 F.Supp. 521, 526 (D.N.J.1981). Against this background, several district courts have correctly concluded that supervisory employees are agents of employers and, as such, may be proper defendants under Title VII.[1] *See Thompson v. International Ass'n of Machinists and Aerospace Workers*, 580 F.Supp. 662, 668–69 (D.D.C.1984); *Jones v. Metropolitan Denver Sewage Disposal Dist.*, 537 F.Supp. 966, 970 (D.Colo.1982); *Guyette*, 518 F.Supp. at 526; *Bradley v. Rockland County Community Mental Health Center*, 25 Fair Empl.Prac.Cas. (BNA) 225, 228 (S.D.N.Y.1980).

▮ While supervisory employees fall within the ambit of the term "employer," the same is not true of employees who do not supervise the Title VII plaintiff. Consequently, if any of the individual defendants was not in a supervisory position with respect to plaintiff, he would not be a person against whom plaintiff could maintain a Title VII action.

▮ The employment relationship between plaintiff and each of the individuals is unclear from the face of the complaint. Nonetheless, there is at least a reasonable

inference that Jervis, Moran, and Weber were supervisory personnel. This inference cannot be overcome by defendants without the support of affidavits to the contrary. *See Guyette*, 518 F.Supp. at 526. Therefore, defendants' argument that these individuals were not plaintiff's "employer" must be rejected on the basis of the present record. However, because plaintiff has conceded that defendant Roth was not a supervisor, *see* Plaintiff's Memorandum in Opposition to Motion for Partial Dismissal and Motion to Strike at 4, the Title VII claim against Roth must be dismissed.

▮ The individuals alternatively assert that even if they may be deemed to be plaintiff's employer, the Title VII action should be dismissed because plaintiff failed to name them as respondents in the charge she filed with the Pennsylvania Human Relations Commission (PHRC) and the Equal Employment Opportunity Commission (EEOC).

Section 2000e–5(f)(1) requires a complainant to file charges against a person before the EEOC prior to commencing an action in district court. Plaintiff concedes that she did not file charges against the individuals with the EEOC, but asserts that her filing of EEOC charges against Textron satisfies the jurisdictional prerequisite to bringing an action here against the individuals.

In *Glus v. G.C. Murphy Co.*, 562 F.2d 880 (3d Cir.1977), the Third Circuit provided a four-factor equation for determining whether an EEOC charge against one party would be sufficient to allow a district court to exercise jurisdiction over Title VII claims against another party. The *Glus* court stated that the district court should look to the following:

1) whether the role of the unnamed party could through reasonable effort by

---

1. *Huebschen v. Department of Health & Human Servs.*, 716 F.2d 1167 (7th Cir.1983), cited by defendants, is not persuasive to the contrary, because plaintiff in that case conceded that the individual defendant was not an employer. *Id.* at 1170. The language which defendants quote from Judge Troutman's opinion in *Martin v.*

*Easton Publishing Co.*, 478 F.Supp. 796, 799 (E.D.Pa.1979), also fails to convince me that individual employees cannot be "an employer" for Title VII purposes because the language defendants quote pertains to the definition of "employer" for purposes of the Equal Pay Act and not Title VII.

the complainant be ascertained at the time of the filing of the EEOC complaint;

2) whether under the circumstances, the interests of a named [party] are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings;

3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party;

4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

*Id.* at 888.

Following the filing of defendants' motion, an evidentiary hearing was conducted for the purpose of evaluating the *Glus* factors. At that time, plaintiff conceded first that she was fully aware of the role of each of the individual defendants when she filed her charge with the PHRC and second that the actual charge she filed only named Textron as a respondent. Plaintiff then testified in effect, however, that she had prepared a draft charge that named the individuals as respondents but that the final form of the charge was prepared by a person at the PHRC who omitted the individuals as respondents and explained to her that she could supplement the charge with whatever she cared to add at the fact-finding hearing. I reject this latter testimony as not credible and unsupported by any corroborating evidence. Moreover, plaintiff offered no satisfactory explanation of why she signed the "second" form if it so materially-differed from the one which she allegedly prepared.

Turning to the second and third factors of the *Glus* test, it would appear that the supervisory individuals' interests were substantially similar to those of Textron. Nonetheless, actual prejudice would be suffered by them if Title VII claims were to proceed against them without their first having been given an opportunity to conciliate. Jervis, Moran, and Weber each testified that they were unaware that they were being sued individually until this federal complaint was filed in October, 1984, and that if they had known that they were being sued individually in the PHRC charge they each might have retained counsel to give them advice. Their failure to take individual corrective or conciliatory efforts before the PHRC could have significant adverse impact on them if plaintiff were to prevail in this action.[2] First, any equitable order I may enter could have a direct detrimental effect on the individual defendants. At the very least, they could be required by Textron to reimburse it for the cost of their defense in this action. Each individual defendant received from Textron a letter similar to a letter addressed to Thomas Moran, which was offered into evidence. This letter provided in part,

Textron will pay the firm for its services in connection with providing you with legal counsel. However, in accordance with Delaware law and Textron's Charter and Bylaws, if at a later time it is determined that you did not act in good faith, that you did not act in a manner you reasonably believed to be in or not opposed to the best interests of Textron, or that you had reasonable cause to believe that your conduct was unlawful, then Textron will seek to be reimbursed by you for the legal fees paid by Textron to that firm for their services in providing you legal counsel in this matter.

*See* letter from Frederick K. Butler, Group Counsel and Assistant Secretary of Textron, Inc. to Thomas Moran (Nov. 30, 1984). Moreover, defendant Weber testified that he had not attended the PHRC fact-finding hearing and was not apprised of the hearing in advance.

---

2. From a purely practical standpoint, the mere filing of the federal sex-discrimination lawsuit would be likely to work substantial prejudice on the individual defendants. For example, the allegations against them could affect the individuals' standing in the community and their future career possibilities.

Based on this testimony it is apparent that the defendants would be exposed to unnecessary, substantial prejudice by allowing this action to proceed against them. *See Novotny v. Great American Savs. & Loan Ass'n*, 77 Fair Empl.Prac.Cas. 440, 441 (W.D.Pa.1980) (finding prejudice because, if officers and directors had known that they would be named as defendants in a lawsuit, they might have hired personal counsel, changed their votes on resolutions before the board, and attempted to compel the corporate defendant to conciliate). The fact that Moran and Jervis were present at the fact-finding hearing does not alter this conclusion because the individuals may have acted differently before the state commission had they known that they could be subject to individual liability. *See id.*

Finally, plaintiff concedes that none of the individual defendants represented to her that his legal relationship to her was to be through Textron.

*Glus* was concerned with striking a balance between the "goal of conciliation without resort to the already overburdened federal courts" and the objective of ensuring the

availability of complete redress of legitimate grievances without undue encumbrance by procedural requirements especially when demanding full and technical compliance would have no relation to the purposes for requiring those procedures in the first instance.

*Glus*, 562 F.2d at 888. In this case a consideration of the *Glus* factors compels me to conclude that plaintiff's Title VII claims are outside of the subject-matter jurisdiction of this court. Holding plaintiff to the administrative requirement in this case "is not mechanical or unthinking allegiance to legal hypertehnicalities; instead, it is recognizing a basic element of the administrative remedy, 'furnishing notice to an alleged Title VII offender and ...

providing an opportunity to conciliate.'" *Martin v. Easton Publishing Co.*, 478 F.Supp. 796, 797 (E.D.Pa.1979) (quoting *Peterson v. Lehigh Valley District Council*, 453 F.Supp. 735, 739–40 (E.D.Pa.1978)). Accordingly, the Title VII claims against the individual defendants will be dismissed.[3]

Defendants next assert that because the federal claims against them have been dismissed for lack of jurisdiction, the pendent state claims should be dismissed as well. My touchstone in this regard is *Ambromovage v. United Mine Workers*, 726 F.2d 972, 989–92 (3d Cir.1984), where the Third Circuit established a three-part standard for determining whether ancillary or pendent jurisdiction should be exercised in a particular case. Writing for the court, Judge Becker stated,

On the first level, a court must determine whether it has constitutional power to determine a state-law claim. This 'power' test depends on whether there is a 'common nucleus of operative fact' between the state claim at issue and the accompanying federal claims. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). As we see it, *Gibbs* provides the unifying principle which limits the extent of federal jurisdiction over both pendent and ancillary claims. The second level requires the court to determine whether the exercise of jurisdiction at issue would violate a particular federal policy decision, such as the requirement of complete diversity or the explicit exclusion of a particular party from federal liability for the actions alleged in the complaint. At this level, the court may consider whether the plaintiff's assertions of ancillary or pendent jurisdiction is an attempt to manufacture federal jurisdiction where it is otherwise foreclosed by the relevant statutes. The issue generally

---

**3.** Dismissal of the Title VII claims against the individuals does not, of course, leave plaintiff without a remedy under Title VII. The principal defendant, Textron, which employed all the individual defendants, remains a viable defend-

ant, and it is Textron alone which has the power to reinstate and otherwise make financial compensation to plaintiff. *See Martin v. Easton Publishing Co.*, 478 F.Supp. 796, 797 (E.D.Pa. 1978).

turns on statutory interpretation. The final level—prudential in character—is for the district court, in its discretion, to weigh various factors bearing on the appropriateness of hearing a pendent claim. *Id.* at 989–90 (footnotes omitted).

 It will be assumed that plaintiff's state-law claims derive from a nucleus of operative fact which is common with that underlying the Title VII claim. However, the exercise of jurisdiction over the state-law claims against the individuals would violate federal labor policy, and the exercise of discretion over all the state-law claims would improvidently expand the issues involved in this case.

The second prong of the *Andromovage* test stems from Supreme Court concern in both *Aldinger v. Howard,* and *Owen Equipment and Erection v. Kroger,* that pendent or ancillary jurisdiction was being used to subvert statutory limits on federal jurisdiction. *See Adromovage,* 726 F.2d at 992 (citing *Owen Equipment and Erection Co. v. Kroger,* 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978); *Aldinger v. Howard,* 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976)). A similar concern would be implicated if the court were to exercise pendent-party jurisdiction over the state-law claims against the individuals who were not named in the administrative charge.

As previously discussed, Congress has expressed a strong policy in favor of fostering reconciliation of discrimination complaints. This policy is embodied in an elaborate procedural mechanism which circumscribes the jurisdiction of district courts. Both the policy and its implementing mechanism could be subverted by exercising jurisdiction over state-law claims such as those brought against the individuals in this case. A complainant could partially by-pass the administrative stage simply by naming only one party as a respondent before the EEOC and then styling claims against other parties as state-law claims arising out of a nucleus of operative fact that is common with the claim presented to the EEOC. Consequently, I find that con-

gressional policy precludes my exercising pendent-party jurisdiction in this case. *See Medina v. Spotnail, Inc.,* 591 F.Supp. 190, 195–96 (N.D.Ill.1984); *Curtis v. Continental Illinois Nat'l Bank,* 568 F.Supp. 740 (N.D.Ill.1983); *Kiss v. Tamarac Utilities, Inc.,* 463 F.Supp. 951 (S.D.Fla.1978).

 Prudential considerations dictate that I dismiss all the state-law claims. First, trial of the state-law issues would be likely to predominate over trial of the Title VII claim. For example, damages' issues stemming from plaintiff's tort claims probably would entail a protracted battle between experts. Additional medical testimony and reports would be required. The scope of the trial would be unnecessarily expanded because none of this evidence would be relevant to the Title VII claim. *Cf. Mazzare v. Burroughs Corp.,* 473 F.Supp. 234, 241 (E.D.Pa.1979) (dismissing plaintiff's state-law claim for intentional infliction of emotional distress in an ADEA case because, *inter alia,* medical issues raised by state-law claims would unnecessarily expand the scope of the trial).

Second, while plaintiff's tort claims call for punitive damages, only equitable relief is available under Title VII. In an analogous situation Judge Broderick observed,

Title VII affords only equitable relief, money damages being limited to backpay. Under the state tort claim, however, plaintiff seeks punitive damages. In effect, her state claim seeks relief which is not available under Title VII. Because she 'implicates divergent legal theories of relief,' pendent jurisdiction is particularly inappropriate.

*Lazic v. University of Pennsylvania,* 513 F.Supp. 761, 770 (E.D.Pa.1981) (quoting *United Mine Workers of America v. Gibbs,* 383 U.S. 715 at 727, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218). *See also Bouchet v. National Urban League, Inc.,* 730 F.2d 799, 805 (D.C.Cir.1984) (claim under District of Columbia law for defamation and "sexual extortion"); *Jong-Yul Lim. v. International Institute,* 510 F.Supp. 722, 726 (E.D.Mich.1981) (unspecified state-law claim); *Kiss v. Tamarac Utilities, Inc.,* 463

F.Supp. 951, 954 (S.D.Fla.1978) (state claims for defamation, interference with employment relationship, and assault); *Silverman v. Lehigh Univ.*, 19 Fair Empl. Prac.Cas. (BNA) 983, 990 (E.D.Pa.1976) (state civil-rights act claim).

Finally, with respect to plaintiff's intentional infliction of emotional distress claim against Textron, principles of federalism suggest that these claims be dismissed because exercising jurisdiction over the claim would require resolution of several unsettled questions of state law. *See generally Maravasi v. Shorty*, 70 F.R.D. 14, 19 (E.D. Pa.1976). *Cf. Jong-Yul Lim v. International Institute*, 510 F.Supp. at 726 (dismissing state contract and statutory claims because of unsettled question of state law); *Mazzare v. Burroughs Corp.*, 473 F.Supp. at 241 (dismissing state claim for intentional infliction of emotional distress because of paucity of state decisions on point). One such unsettled question is whether plaintiff's claim against Bridgeport is barred by the Pennsylvania Workmen's Compensation Act. Plaintiff, herself, recognized the unsettled nature of this question, stating that she "could not locate *any* Pennsylvania authority on point regarding the exclusivity provision of the Workmen's Compensation Act in reference to purely psychological injuries." *See* Plaintiff's Memorandum in Opposition to Motion for Partial Dismissal and Motion to Strike at 9 (emphasis added).

Consequently, based on the foregoing, the court in its discretion will not hear the state-law claims presented by plaintiff.

Because only plaintiff's Title VII claim against Bridgeport remains, her jury demand and claim for punitive damages are stricken.

An order follows.

### ORDER

AND NOW, this 11th day of December, 1985, it is hereby ordered as follows:

1. Count I of plaintiff's complaint is dismissed as against defendants Moran, Jervis, Weber, and Roth;

2. Counts II, III, and IV of plaintiff's complaint are dismissed;

3. Plaintiff's jury-trial demand is stricken; and

4. Plaintiff's claim for punitive damages is stricken.