**Joanne M. BOWERSOX and Allen H. Bowersox, Plaintiffs,**

**v.**

**P.H. GLATFELTER COMPANY and Donald Young, Defendants.**

**Civ. A. No. 87–0931.**

United States District Court, M.D. Pennsylvania.

Jan. 13, 1988.

J. Ross McGinnis, Jane H. Schussler, Stock and Leader, York, Pa., for plaintiffs.

John B. Langel, Christine T. Eskilson, Mary Ellen Maatman, Ballard, Spahr, Andrews & Ingersoll, Philadelphia, Pa., and Charles W. Rubendall, II, Keefer, Wood, Allen & Rahal, Harrisburg, Pa., Alan M. Lerner, Philadelphia, Pa., for defendants.

## MEMORANDUM

RAMBO, District Judge.

Before the court is the motion of defendants to dismiss Counts Three and Four of

plaintiffs' complaint. The motion has been fully briefed and is ripe for disposition.

*Background*

On July 7, 1987 plaintiffs initiated the captioned action. The complaint alleges that plaintiff Joanne Bowersox was formerly an employee of defendant P.H. Glatfelter Company ("Glatfelter") and that her immediate supervisor was defendant Young. According to plaintiffs, Young subjected Joanne Bowersox to sexual harassment for several years while they worked together. The alleged harassment included statements by Young concerning his sexual virility, statements concerning his outings at strip joints, and statements about the sexual performance of other female employees. Young also allegedly inquired about Joanne Bowersox's ability to have sexual relations after surgery, inquired about her sexual performance, and invited her to watch him swim in the nude and to ski with him. The invitations, according to plaintiffs, were intended by Young to result in liaisons with Joanne Bowersox. Young also allegedly displayed a sexually explicit poster and an explicit newspaper clipping, put his hands in his pants and discussed his sexual virility before Joanne Bowersox, and told her that her job was not a woman's job.

Plaintiffs further allege that because Joanne Bowersox rejected Young's "sexual conduct" and because of her sex, Young assigned burdensome tasks, withheld information from her which was necessary in her job, created an oppressive work environment, and followed her throughout defendant's plant. Young also allegedly threatened Ms. Bowersox with suspension if she complained about Young's conduct, advised her that he would give her a good performance evaluation only if he liked her, and eventually rated her performance as less than satisfactory with no basis for doing so. Young's conduct toward Joanne Bowersox created such a difficult working environment, according to plaintiffs, that Ms. Bowersox ultimately felt compelled to resign. In addition to suffering monetary damages after resigning, Joanne Bowersox allegedly experienced severe emotional distress, embarrassment, headaches, nausea, skin rashes, and depression as a result of Young's conduct and Glatfelter's failure to investigate that conduct.

On the basis of these allegations plaintiffs assert four causes of action. In the first count of the complaint plaintiffs allege that Young's harassment of and sexually discriminatory conduct toward Joanne Bowersox violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"). Glatfelter is alleged to have condoned Young's actions. The second count of the complaint contains allegations that the failure of Glatfelter to investigate or prevent Young's conduct resulted in the constructive discharge of Joanne Bowersox, again in violation of the Civil Rights Act. In the third count plaintiffs assert, pursuant to state law, a cause of action for intentional infliction of emotional distress. Finally, Count Four states that defendants are liable to plaintiff Allen Bowersox under state law for the loss of his wife's consortium, which resulted from the intentional infliction of emotional distress alleged in Count Three.

Defendants have moved pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the third and fourth counts of the complaint. They argue that the conduct which plaintiffs have alleged is not the type of conduct that constitutes intentional infliction of emotional distress according to Pennsylvania law. Defendants further argue that because Allen Bowersox's loss of consortium claim is derivative of Joanne Bowersox's right to recover, the failure to state a claim for intentional infliction of emotional distress in Count Three compels the dismissal of the loss of consortium claim in Count Four. Alternatively, defendants argue that this court should not exercise pendent or ancillary jurisdiction over the state law causes of action contained in Counts Three and Four. Defendants' motion does not address Counts One and Two of the complaint. The court will address each of the defendants' arguments.

*Discussion*

In addressing a motion brought pursuant to Federal Rule of Civil Procedure 12(b)(6),

the court bears in mind the rule that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). The court must accept the factual allegations of the complaint as true and draw reasonable factual inferences to aid the pleader. *D.P. Enterprises v. Bucks County Community College*, 725 F.2d 943, 944 (3d Cir.1984).

## A. Intentional Infliction of Emotional Distress

The tort of intentional infliction of emotional distress has been defined as follows: "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." Restatement (Second) of Torts § 46(1) (1965). Because this tort is not a matter governed by the Constitution or by federal law, the court must apply the law of Pennsylvania. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938).

As recently as 1986 the Pennsylvania Superior Court declared that Pennsylvania had adopted the Restatement position on intentional infliction of emotional distress. *Stoddard v. Davidson*, 355 Pa.Super. 262, 268 n. 1, 513 A.2d 419, 422 n. 1 (1986). Relying in part on *Stoddard*, the Third Circuit Court of Appeals recently stood by its prediction made several years earlier that Pennsylvania would adopt section 46 of the Restatement (Second) of Torts. *Wisniewski v. Johns–Manville Corp.*, 812 F.2d 81, 85 (3d Cir.1987), *citing Chuy v. Phila-*delphia Eagles Football Club*, 595 F.2d 1265, 1274 (3d Cir.1979). Several months after the Third Circuit Court issued its decision in *Wisniewski* and approximately one year after *Stoddard*, however, the Pennsylvania Supreme Court specifically declined to adopt the Restatement position on intentional infliction of emotional distress. *Kazatsky v. King*, 515 Pa. 183, 185, 527 A.2d 988, 989 (1987).

Although the court in *Kazatsky* declined to adopt the Restatement position, it did so not so much out of disagreement with the subject matter of section 46 but because the evidence in *Kazatsky* did not "establish a right of recovery under the terms of the provision as set forth in the Restatement...." *Id.* at 185, 527 A.2d at 989. Thus, the Pennsylvania Supreme Court somewhat confusingly used the elements of intentional infliction of emotional distress as set forth in section 46 to decide that the plaintiffs in that case had not stated such a cause of action but left "to another day the question of the viability of section 46 in this Commonwealth." *Id.*[1] At the same time the court expressed concern about the imprecision of the terms used in the Restatement, *id.* at 195, 527 A.2d at 994, the court also gave some indication that it might in the future adopt section 46 of the Restatement.[2] In light of that indication and noting the reliance on section 46 by the Pennsylvania Superior Court in *Stoddard* and the Third Circuit Court of Appeals in *Wisniewski*, this court will apply section 46 to the claim of intentional infliction of emotional distress asserted by plaintiffs in the action at bar.

"The cause of action has three elements: the conduct must be 'extreme and outrageous', be 'intentional or reckless', and cause severe emotional distress." *Wis-*

---

**1.** In a concurring opinion, Justice Larsen recognized this paradox:

> To measure appellants' cause of action according to the standards set forth in section 46 of the Restatement (Second) of Torts and to purport to establish what evidence is required to prove an injury pursuant to section 46 is to adopt section 46 in this jurisdiction, in spite of what the majority states to the contrary.

*Id.* at 198, 527 A.2d at 995 (Larson, J. concurring). Justice Papadakos also favored adoption of section 46; only Justice Hutchinson did not.

**2.** The court concluded that *"if section 46 of the Restatement is to be accepted in this Commonwealth,* at the very least, existence of the alleged emotional distress must be supported by competent medical evidence." *Id.* at 198, 527 A.2d at 995 (emphasis supplied).

*niewski,* 812 F.2d at 85. Only the first element is the subject of defendants' argument that plaintiffs in the instant action have failed to state a claim of intentional infliction of emotional distress. Extreme and outrageous conduct, according to the Restatement, is conduct which is "beyond all possible bounds of decency," "atrocious," and "utterly intolerable in a civilized community." Restatement (Second) of Torts § 46, comment d. The writers of section 46 established a test for actionable behavior which the majority in *Kazatsky* found to be "strange": [3] "Generally the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!' " Restatement (Second) of Torts § 46, comment d. The drafters of the Restatement then describe the type of behavior which does not support a cause of action for intentional infliction of emotional distress; "mere insults, indignities, threats, annoyances, petty oppressions, and other trivialities" do not constitute the intentional infliction of emotional distress. *Id.*

The Third Circuit Court, noting the substantial restrictions which Pennsylvania courts have placed on this cause of action, found that when a "special relationship" exists the section 46 test has been relaxed. *Bradshaw v. General Motors Corp.,* 805 F.2d 110, 114 (3d Cir.1986). Two special relationships recognized by the court are the family relationship and the landlord-tenant relationship. *Id.* With respect to the employer-employee relationship, however, the court reached the following conclusion: "Nor do we find that the employer-employee status is a special relationship similar to that of landlord-tenant or parent-child, that would justify relaxation of the Restatement standards." *Id.* at 115.[4] The court found the plaintiff's allegations that the defendant employer had misled plain-

tiff's decedent about that individual's chance of being rehired were insufficient to sustain a cause of action for intentional infliction of emotional distress. *Id.*

Although the employer-employee relationship is not a "special relationship," several district courts have found a cause of action for intentional infliction of emotional distress in that context. For instance, the plaintiff in *Shaffer v. National Can Corp.,* 565 F.Supp. 909 (E.D.Pa.1983) was the subject of sexual harassment over the course of almost four years. Her supervisor repeatedly, and on one occasion publicly, invited her to accompany him socially. When the plaintiff refused to accept his invitations, the supervisor made threats concerning the plaintiff's employment status and retaliated against the plaintiff by making her job difficult to perform. The district court found that these allegations were sufficient to state a cause of action for intentional infliction of emotional distress. *Id.* at 915. The cases on which the *Shaffer* court relied were *Vegh v. General Electric Co.,* 34 Fair Empl.Prac.Cas. 137 (E.D.Pa. 1983) (the plaintiff's supervisor subjected her to "continual harassment including unwelcomed sexual advances, verbal and physical conduct ..., unequal treatment as an employee and interference with plaintiff's ability to take advantage of [the defendant's] tuition reimbursement." *Id.* at 136); *Rogers v. Loews L'Enfant Plaza Hotel,* 526 F.Supp. 523 (D.D.C.1981) (the plaintiff's supervisor made sexual advances to the plaintiff and reacted to her refusals by making the plaintiff's working conditions intolerable); and *Stewart v. Thomas,* 538 F.Supp. 891 (D.D.C.1982) (the plaintiff was subjected to verbal and physial sexual harassment, and the plaintiff's refusal of advances led to retaliation). In a more recent opinion the district court in *Fawcett v. I.D.S. Financial Services,* 41 Fair Empl.

---

**3.** *Kazatsky,* 515 Pa. at 195–96, 527 A.2d at 994, quoting Givelber, *The Right to Minimum Social Decency and the Limits of Evenhandedness: Intentional Infliction of Emotional Distress by Outrageous Conduct,* 82 Colum.L.Rev. 42 (1982).

**4.** This finding appears to conflict with dicta in the more recent opinion in *Wisniewski,* 812 F.2d at 86. In *Wisniewski* the court seems to recog-

nize the employer-employee relationship as a special relationship justifying the relaxation of the Restatement standards. Since that recognition is contained in dicta only and the finding quoted from *Bradshaw* is part of the holding in that case, this court will follow the position in *Bradshaw.*

Prac.Cas. 589 (W.D.Pa.1986) [Available on WESTLAW, 1986 WL 9877] found that the plaintiff had stated a cause of action for intentional infliction of emotional distress where the plaintiff alleged that her manager had made physical advances to her on two occasions and had conditioned the plaintiff's promotion on her submission to sexual relations with him. The court concluded that the manager's conduct was "sufficiently outrageous to withstand a motion to dismiss for failure to state a claim upon which relief can be granted." *Id.* at 593.

Other cases in which courts have found a sufficient basis for a cause of action for intentional infliction of emotional distress include *Papieves v. Lawrence*, 437 Pa. 373, 263 A.2d 118 (1970) (the defendant struck and killed the plaintiffs' son with his vehicle and without notifying the authorities or obtaining medical assistance buried the body in a field where it was found two months later in a decomposed state and subsequently returned to the plaintiffs); *Banyas v. Lower Bucks Hospital*, 293 Pa. Super. 122, 437 A.2d 1236 (1981) (the defendant's employees intentionally fabricated records to suggest that the plaintiff had killed a third party, leading to the plaintiff's indictment for homicide); and *Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265 (3d Cir.1979) (the defendant's team physician stated to the press that the plaintiff was suffering from a fatal disease, although the physician knew the plaintiff was not suffering from the disease).

In the case at bar the court will examine the allegations concerning the conduct of Donald Young toward Joanne Bowersox in light of section 46 of the Restatement and the cases summarized above. Under the holding in *Bradshaw*, 805 F.2d at 115, the court must not hold plaintiffs' allegations to a standard any less exacting than the Restatement standards simply because the alleged conduct took place in the context of an employer-employee relationship. Because the Restatement standards for extreme and outrageous conduct are based on a community's perception of the conduct alleged, the court's task is a difficult one.

As stated in the law review article quoted with approval by the Pennsylvania Supreme Court in *Kazatsky*, "courts may have no particular wisdom with respect to what is socially intolerable." *Kazatsky*, 515 Pa. at 196, 527 A.2d at 994, *quoting* Givelber, *supra.* Nevertheless, "[i]t is the duty of the court to determine, in the first instance, whether the defendants' conduct could reasonably be regarded as so extreme and outrageous as to permit recovery." *Wells v. Thomas*, 569 F.Supp. 426, 433 (E.D.Pa.1983).

If the only allegations supporting Joanne Bowersox's claim for intentional infliction of emotional distress were those concerning defendant Young's sexual harassment of her, the court would be forced to conclude that Count Three failed to state a claim upon which relief could be granted. The allegations of Young's sexual harassment describe conduct which is insulting, undignified, annoying, and perhaps representative of the "rough edges of our society." Restatement (Second) of Torts § 46, comment d. In and of themselves however, the sexual conversation and conduct in which Young is alleged to have engaged do not constitute the type of extreme and outrageous conduct involved in *Papieves*, *Banyas*, and *Chuy*.

However, Bowersox's claim for intentional infliction of emotional distress is also supported by allegations that Young retaliated against Joanne Bowersox as a result of Bowersox's "rejection of [Young's] sexual conduct...." Complaint at ¶ 14(e). Specifically, plaintiffs allege that Young withheld information from Bowersox which she needed to perform her job, forbade her to talk to anyone in the office, prohibited her from answering the phone, refused to talk to her and followed her throughout the plant. Accepting these allegations as true for purposes of this motion, the court finds, as did the court in *Shaffer*, that the alleged retaliatory behavior of Young "takes this case far beyond the ambit of insults or demeaning jingles." *Shaffer*, 565 F.Supp. at 916. That a supervisor would subject his female employee to highly offensive speech and conduct in a

close working environment and then, as a result of her negative reaction to that conduct, make the employee's job impossible to perform could in the court's opinion lead an average member of the community to exclaim, "Outrageous!" Thus, the court finds that the allegations in the complaint describe conduct which is "sufficiently outrageous to withstand a motion to dismiss for failure to state a claim upon which relief can be granted." *Fawcett*, 41 Fair Empl.Prac.Cas. at 593.

### B. *Loss of Consortium*

■ "[A] consortium claim is grounded on the loss of a spouse's services after injury." *Burns v. Pepsi–Cola Metropolitan Bottling Co.*, 353 Pa.Super. 571, 576, 510 A.2d 810, 812 (1986). In the case at bar Allen Bowersox alleges that "[a]s a result of Defendants' intentional infliction of emotional distress upon Bowersox and the results therefrom, plaintiff Allen Bowersox has, from time to time, been deprived of the services, society and companionship of his wife and will continue to be so deprived, as to which he is entitled to compensatory damages under state law." Complaint at ¶ 40. Defendants argue that the loss of consortium claim is deficient in that there is no allegation that Joanne Bowersox suffered a disabling physical injury.

In support of their argument, defendants refer the court to *Meyer v. California and Hawaiian Sugar Co.*, 20 Empl.Prac.Dec. (CCH) ¶ 30,152 (N.D.Ca.1979) [Available on WESTLAW, 1979 WL 267]. In *Meyer* the district court, relying on Prosser's treatise on torts and the second Restatement of Torts, held that for a husband to recover for loss of consortium it was necessary that he allege a physical injury or other

bodily harm to his wife. Because the plaintiff husband in *Meyer* alleged only that his wife suffered depression and was "at times withdrawn" as a result of the conduct of her employer, the court dismissed the husband's loss of consortium claim. *Id.* at 11,795. Unlike the plaintiffs in *Meyer*, plaintiffs in the case at bar have alleged that Joanne Bowersox suffered physical illness as a result of defendants' conduct. *Meyer*, therefore, is inapposite. Further, defendants have cited no Pennsylvania law standing for the proposition that a disabling physical injury to one spouse is a predicate to the recovery by the other spouse for loss of consortium. The Pennsylvania Superior Court in *Burns* did not specify the type of injury on which a loss of consortium claim may be grounded, but merely states that the claim must be based on "an injury" to the other spouse. The emotional and physical injuries allegedly suffered by Joanne Bowersox, *i.e.* severe emotional distress, depression, severe headaches, and nausea, could as easily cause deprivation to Allen Bowersox of his wife's society and companionship as could a disabling physical injury. Therefore, the allegations in Count Four adequately state a claim upon which relief can be granted.

### C. *Pendent and Ancillary Jurisdiction*

The authoritative opinion in this circuit on the concepts of pendent and ancillary jurisdiction is *Ambromovage v. United Mine Workers of America*, 726 F.2d 972 (3d Cir.1984). In that case the Third Circuit Court of Appeals adopted the following three-tiered analysis for the purpose of determining whether a court should exercise pendent or ancillary jurisdiction in a particular case:[5]

---

**5.** Conceding that the terms "ancillary jurisdiction" and "pendent jurisdiction" overlap and are often interchangeable, the Third Circuit Court nevertheless declined to discontinue using the traditional terms and distinguished between them with the following definitions:

'ancillary jurisdiction' has traditionally been used to refer to federal jurisdiction over claims other than those of the plaintiff, such as compulsory counterclaims, cross-claims, impleader claims, and the claims of a party intervening as of right … 'Pendent jurisdiction' generally refers to a federal court's juris-

diction over the non-federal claims, as long as there is a federal claim which gives the court jurisdiction.

*Id.* at 989, n. 48. Despite the definitional distinction, however, it is apparent the court intended that the same analysis be applied in determining "whether ancillary *or* pendent jurisdiction should be exercised in a particular case." *Id.* at 989. Because the analysis is the same with respect to both ancillary and pendent jurisdiction, it is not necessary for this court to label the type of jurisdiction which plaintiffs

On the first level, a court must determine whether it has constitutional power to determine a state-law claim. This "power" test depends on whether there is a "common nucleus of operative fact" between the state claim at issue and the accompanying federal claims. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). As we see it, *Gibbs* provides the unifying principle which limits the extent of federal jurisdiction over both pendent and ancillary claims. The second level requires the court to determine whether the exercise of jurisdiction at issue would violate a particular federal policy decision, such as the requirement of complete diversity or the explicit exclusion of a particular party from federal liability for the actions alleged in the complaint. At this level, the court may consider whether the plaintiff's assertion of ancillary or pendent jurisdiction is an attempt to manufacture federal jurisdiction where it is otherwise foreclosed by the relevant statutes. The issue generally turns on statutory interpretation. The final level—prudential in character—is for the district court, in its discretion, to weigh various factors bearing on the appropriateness of hearing a pendent claim.

*Id.* at 989–990 (footnotes omitted).

Since the formulation of the three-tiered analysis in *Ambromovage*, district courts in this circuit have reached different conclusions with respect to exercising pendent jurisdiction in circumstances quite similar to those in the case at bar. In *Polay v. West Co.*, 629 F.Supp. 899 (E.D.Pa.1986) the plaintiff sought to amend her complaint by adding a Title VII claim and an intentional infliction of emotional distress claim. The court found that the intentional infliction of emotional distress claim would raise factual and legal issues in addition to those raised by the Title VII claim and that the additional issues would complicate the case. The assertion of the emotional distress claim would also require the court to resolve unsettled state law, according to the *Polay* court. Exercising its discretion, the court refused to allow the plaintiff to add the intentional infliction of emotional distress claim.

For some of the same reasons on which the *Polay* court relied, the court in *Duva v. Bridgeport Textron*, 632 F.Supp. 880 (E.D. Pa.1985) dismissed state law claims that were asserted in conjunction with a Title VII claim. The court found that proof of the damages available in the state law causes of action, but not available in a Title VII claim, would expand the scope of the trial unnecessarily. *Id.* at 885. The court disapproved of the divergence of the plaintiff's theories of recovery; whereas the state tort claims might entitle the plaintiff to punitive damages, the Title VII claim entailed only equitable relief. The court also balked at resolving unsettled questions of state law. *Id.* at 886. In addition to these "prudential considerations" the *Duva* court declined to exercise pendent jurisdiction over the plaintiff's state law tort claims on the grounds that to do so would subvert the congressional policy in favor of the settlement of Title VII claims through administrative procedures. *Id.* at 885.

In *Davis v. Devereux Foundation*, 644 F.Supp. 482 (E.D.Pa.1986) the complaint included a Title VII claim, an intentional infliction of emotional distress cause of action, and other state law claims. Finding that the additional issues raised by the state law claims would delay the progress of the case, the court decided that exercising pendent jurisdiction would frustrate the congressional policy of expediting Title VII claims. *Id.* at 487.

The court in *Pettibon v. Pennzoil Products Co.*, 649 F.Supp. 759 (W.D.Pa.1986) reached a different conclusion. In *Pettibon* the plaintiff asserted an intentional infliction of emotional distress claim in conjunction with a federal claim based on the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634. The court rejected the argument that the emotional distress claim would require resolution of unsettled state law questions, reasoning as follows:

wish the court to assert. The same analysis will be applied to Ms. Bowersox's intentional inflic-

tion of emotional distress claim and Mr. Bowersox's loss of consortium claim.

Other courts in the Third Circuit have been presented with intentional infliction of emotional distress claims under Pennsylvania law and had no difficulty applying this law ... In addition, standard jury instructions for claims of intentional infliction of emotional distress under Pennsylvania law are available. Pa.S.J.I. (Civ.) § 13.03, June, 1984. This tort is therefore sufficiently defined so that it can be heard in a federal court without causing jury confusion and without requiring an unnecessary decision of state law.

*Id.* at 762.

■ Applying the three-tiered analysis of *Ambromovage* to the case at bar, this court reaches the same conclusion reached by the court in *Pettibon* and respectfully finds the opinions in *Polay, Duva,* and *Davis* to be unpersuasive. The intentional infliction of emotional distress claim which Joanne Bowersox asserts certainly possesses a nucleus of operative fact in common with the facts underlying her federal claims. Both the federal claims and the state law claim depend generally on the assertions that Bowersox's supervisor subjected her to sexual harassment, that defendant Glatfelter failed to address the conduct of the supervisor, and that the sexual harassment resulted in injury to Joanne Bowersox. Because the claims possess a common nucleus of operative fact, this court has constitutional power to exercise jurisdiction over the claim of intentional infliction of emotional distress. *Ambromovage,* 726 F.2d at 989.

Further, the exercise of jurisdiction by this court over the emotional distress claim would not violate any federal policy. Federal jurisdiction over the matters asserted in the complaint exists by virtue of Title VII; therefore, the assertion by Bowersox of the emotional distress claim on the basis of the same facts underlying the Title VII claims does not constitute an attempt to manufacture jurisdiction. Nor is the assertion of the claim an effort to bring a party before this court who is otherwise explicitly excluded from federal jurisdiction for the actions alleged in the complaint. Thus, the second level of the *Ambromovage* analysis does not prohibit the court from exercising pendent jurisdiction over the claim for intentional infliction of emotional distress.

Thirdly, prudential considerations bearing on the appropriateness of exercising pendent jurisdiction do not weigh against the court hearing the intentional infliction of emotional distress claim. Such prudential considerations were found by the court in *Ambromovage* to be convenience, judicial economy, fairness to litigants, and protection of the interests of federalism. *Ambromovage,* 726 F.2d at 990, n. 53. Although the emotional distress claim may expand the scope of the trial in the case at bar and may involve issues in addition to those raised by Joanne Bowersox's Title VII claims, the court finds, unlike the courts in *Polay, Duva,* and *Devereux,* that the additional issues would not complicate or delay the case so as to result in unfairness to defendants. The conduct which Bowersox must prove to sustain her emotional distress claim is the same conduct which is alleged in support of the federal claims. The additional issue of whether Bowersox actually suffered severe emotional distress does not appear on the basis of the allegations in the complaint to be exceedingly complex. In support of her claim of severe emotional distress, Bowersox alleges that she suffered "embarrassment and humiliation resulting in severe headache, nausea, stomach pain, skin rashes and depression...." Complaint at ¶ 36. Proof of these allegations should not unreasonably delay trial, even though the Pennsylvania Supreme Court has ruled that a claim of severe emotional distress must be supported by competent medical evidence. *Kazatsky,* 515 Pa. at 197, 527 A.2d at 995.

In addition to finding that the exercise of jurisdiction over the emotional distress claim should not unduly complicate or delay the case at bar, the court finds that allowing Joanne Bowersox to pursue her state law claim in conjunction with her federal claims promotes convenience and judicial economy. Instead of compelling the parties to litigate federal and state claims having a common nucleus of operative facts in two forums, the court by exer-

cising pendent jurisdiction over the state law claim enables the parties to litigate the related claims expeditiously in one forum. Judicial economy will not be impeded by the unsettled nature of Pennsylvania law on the tort of intentional infliction of emotional distress. Although the Pennsylvania Supreme Court has declined to adopt the Restatement position on this tort, the Pennsylvania Superior Court has relied on and applied the Restatement position as has the Third Circuit Court of Appeals. Further, as noted by the court in *Pettibon,* jury instructions explaining Pennsylvania law on intentional infliction of emotional distress are available. *Pettibon,* 649 F.Supp. at 762. Thus, this court has ample guidance by which to conduct the trial of Joanne Bowersox's state law claim.

Application of the *Ambromovage* three-tiered analysis to the loss of consortium claim which Allen Bowersox asserts bears the same result reached with respect to his wife's claim for intentional infliction of emotional distress. The facts which Allen Bowersox must prove in order to sustain his claim have at least a common nucleus with the facts supporting Joanne Bowersox's Title VII claims, even though the loss of consortium claim does not parallel the Title VII claims as extensively as does the claim for intentional infliction of emotional distress. The common nucleus of operative fact between the loss of consortium claim and the Title VII claims is simply that Joanne Bowersox was allegedly the subject of sexual harassment by her supervisor and that the harassment resulted in injury to her. Thus, the court has the constitutional power to hear Allen Bowersox's loss of consortium claim. On the second level of the *Ambromovage* analysis, the court finds that exercising pendent jurisdiction over the loss of consortium claim would not violate any particular federal policy. Defendants argue that "Title VII does not embrace claims for consortium ..." and that plaintiffs are attempting to manufacture federal jurisdiction where none exists. Defendant's Brief at 12. Defendants do not show, however, that Title VII explicitly excludes defendants from liability for the alleged wrongs complained of in Allen Bowersox's loss of consortium claim. *Am-*

*bromovage,* 726 F.2d at 990. Further, the court has jurisdiction by virtue of Title VII over the allegations which form the basis of the loss of consortium claim. The assertion of that claim, therefore, does not appear to be an attempt to "manufacture federal jurisdiction where it is otherwise foreclosed by the relevant statutes." *Id.*

Finally, the same prudential considerations which weigh in favor of exercising pendent jurisdiction over the intentional infliction of emotional distress claim favor the exercise of pendent jurisdiction over the loss of consortium claim. Convenience and judicial economy will be served by enabling the litigation in one forum of all claims related to defendant Young's alleged sexual harassment of Joanne Bowersox. The additional issues raised by the loss of consortium claim should not significantly delay or complicate the trial of this matter, and the court will not be forced to resolve unsettled state law questions.

*Conclusion*

On the basis of the preceding discussion, the court concludes that plaintiffs have stated causes of action in Counts Three and Four of the complaint and that the exercise of pendent jurisdiction over the claims in those counts is appropriate. Defendants' motion to dismiss will be denied.