Kathleen P. ARNOLD, Lynn
Arnold, Plaintiffs,

v.

KIMBERLY QUALITY CARE NURSING
SERVICE, and Barbara
Parks, Defendants.

Civ. A. No. 1:CV–90–2136.

United States District Court,
M.D. Pennsylvania.

May 6, 1991.

Lawrence S. Markowitz, Markowitz & Markowitz, York, Pa., for plaintiffs.

Lewis S. Kunkel, Jr., Pepper, Hamilton & Scheetz, Thomas E. Brenner, Goldberg, Katzman & Shipman P.C., Harrisburg, Pa., Raymond A. Kresge, Lawrence S. Coburn, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for defendants.

## MEMORANDUM

CALDWELL, District Judge.

### I.  *Introduction And Background*

We are currently considering the motion of defendants, Kimberly Quality Care Nursing Service (Kimberly) and Barbara Parks (Parks), to dismiss certain counts of the complaint, pursuant to Fed.R.Civ.P. 12(b)(6). The plaintiffs, Kathleen P. Arnold and her husband, Lynn Arnold, initiated this lawsuit based upon alleged sexual harassment by defendant Parks directed at Kathleen Arnold and the subsequent retaliatory conduct of both defendants.

The complaint makes the following pertinent allegations. Kathleen Arnold began employment with Kimberly in October of 1988. In December of 1988, defendant Parks became her supervisor. Arnold alleges that over a period of some seven months Parks subjected her to various forms of sexual harassment, which she reported to Parks' superior. Parks thereafter began issuing written warnings to the plaintiff. Kathleen Arnold's employment was terminated on October 12, 1989, shortly after she informed the defendants that she would be contacting the Pennsylvania Human Relations Commission about her situation.

The complaint sets forth the following claims on behalf of Kathleen Arnold: (1) Count I—a Title VII claim for retaliatory discharge, *see* 42 U.S.C. §§ 2000e *et seq.;* (2) Count II—a claim for assault and battery; and (3) Count III—a claim for intentional infliction of emotional distress. Count IV is a state law claim for loss of consortium on behalf of Lynn Arnold.

Kimberly moves to dismiss Counts II through IV against it, arguing that the Pennsylvania Workmen's Compensation Act bars these claims against an employer. Both defendants move to dismiss Count IV for lack of subject matter jurisdiction.

### II.  *Discussion*

### A.  *The Pennsylvania Workmen's Compensation Act*

■  Kimberly asserts that the plaintiffs' claims for assault and battery, intentional infliction of emotional distress, and loss of consortium should be dismissed because the Pennsylvania Workmen's Compensation Act ("the Act") is the exclusive remedy for work related conduct. The Act provides:

> (a) The liability of an employer under this act shall be exclusive and in place of any and all other liability to such employees ... on account of any injury or death as defined in section 301(c)(1) and (2)....

77 P.S. § 481(a) (Purdon Pamphlet 1990–91).

Kimberly relies upon Pennsylvania cases which have held that this exclusivity provision covers claims for intentional torts arising at the work place and hence prohibits plaintiff from pursuing the common law claims set forth in the instant case. Defendant cites *Poyser v. Newman & Co.,* 514 Pa. 32, 522 A.2d 548 (1987); *Blouse v. Superior Mold Builders, Inc.,* 363 Pa.Super. 516, 526 A.2d 798 (1987); and *James v. International Business Machines Corp.,* 737 F.Supp. 1420 (E.D.Pa.1990) (citing *Poyser* ).

We reject Kimberly's argument because it does not consider the Act's exception for

injuries caused by third persons arising from purely personal reasons:

> The term 'injury arising in the course of employment' . . . shall not include an injury caused by an act of a third person intended to injure the employe because of reasons personal to him, and not directed against him as an employe or because of his employment; but shall include all injuries sustained while the employe is actually engaged in the furtherance of the business or affairs of the employer. . . .

77 P.S. § 411(1) (Purdon Pamphlet 1990–91) (quoted in pertinent part).

In *Schweitzer v. Rockwell International,* —— Pa.Super. ——, 586 A.2d 383 (1990), the Pennsylvania Superior Court interpreted this section to preserve an employee's claim against her employer for assault and intentional infliction of emotional distress arising from her supervisor's sexual harassment. The plaintiff alleged that her supervisor had made lewd remarks and had touched her breasts. Along with a claim for a retaliatory transfer when she complained about the supervisor's conduct, she sought to hold the defendant vicariously liable for the supervisor's sexual harassment. The defendant claimed that the exclusivity provision of the Act barred the latter claim. The superior court, however, rejected the argument.

The court first noted that, under *Mike v. Borough of Aliquippa,* 279 Pa.Super. 382, 421 A.2d 251 (1980), a fellow employee may be a "third person" within the statutory meaning. It then concluded that an employer could be sued based upon allegations of "harassment personal in nature and not part of the proper employer/employee relationship." *Schweitzer,* —— Pa. Super. at ——, 586 A.2d at 391. The court distinguished *Poyser, supra,* because "[n]o third person/fellow employee [was] involved" in that case. Id. at ——, 586 A.2d at 392 (brackets added).

*Schweitzer* was followed in *Gruver v. Ezon Products, Inc.,* No. 1:CV–90–2078, slip op. at 8 (M.D.Pa. Mar. 22, 1991) (Rambo, J.) ("harassment of a sexual nature in the work place has nothing to do with work, but rather stems from reasons personal to the party foisting his attentions on a co-worker" and hence a claim for intentional infliction of emotional distress would not be dismissed on the ground of the exclusivity of the worker's compensation Act) and *Borton v. Unisys Corp.,* 1991 WL 915 (E.D.Pa.) (a common law claim for intentional infliction of emotional distress based upon sexual harassment "motivated by personal animosity and . . . not aris[ing] from the employment relationship" is not barred by the exclusivity provision). *See also Garvey v. Dickinson College,* 761 F.Supp. 1175 (M.D.Pa.1991) (McClure, J.). In contrast, *James, supra,* involved a situation where the alleged sexual and racial discrimination was motivated by discrimination in employment and, in any event, did not deal with the third party exception.

*Schweitzer, Gruver* and *Borton* are convincing. Although the complaint here could have been more specific, it fairly alleges, as in those cases, sexual harassment by a supervisor arising from purely personal motives and having no connection to the work place, at least until Kathleen Arnold began to complain to Parks' supervisor about the harassment. Thus, despite the allegation, as pointed out by the defendants, that Parks was acting at all times within the scope of her agency for Kimberly, (complaint, ¶ 3), such harassment comes within the third party exception to the worker's compensation act. A claim based on that harassment cannot be dismissed on the ground of the exclusivity of the Act. Therefore, we deny Kimberly's motion to dismiss Counts II, III and IV of the complaint.

**B.** *Pendent Party Jurisdiction*

■ The defendants contend that the court lacks subject matter jurisdiction over Lynn Arnold's state law claim for loss of consortium in Count IV of the complaint. They point out that he has no federal claim himself and that Count IV is derivative of his wife's state claims, not her Title VII federal claim. Hence, with no independent basis of jurisdiction, we cannot entertain the claim and we must dismiss it. Defendants cite, in part, *Schnabel v. Building*

*And Construction Trades Council,* 563 F.Supp. 1030 (E.D.Pa.1983) and *Fritts v. Niehouse,* 604 F.Supp. 823 (W.D.Mo.1984).

Defendants' reliance on these cases is misplaced. As plaintiffs have pointed out, our jurisdiction over Lynn Arnold's claim is controlled by 28 U.S.C. § 1367, the codification of section 310 of the Judicial Improvements Act of 1990. Section 1367 applies to actions, like this one, initiated after December 1, 1990. *See* section 310(c) of the Judicial Improvements Act.

Under the new name "supplemental jurisdiction," section 1367 deals generally with issues of pendent and ancillary jurisdiction. It provides, in pertinent part, as follows:

> (a) Except as provided in subsection (b) [1] and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district court shall have supplemental jurisdiction over all of the claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that include joinder or intervention of additional parties.
>
> . . . .
>
> (c) The district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
>
> (1) the claim raises a novel or complex issue of state law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other reasons for declining jurisdiction.

28 U.S.C. § 1367 (footnote added).

In their reply brief, defendants make several specific arguments that this section is inapplicable to the instant case but the basic thrust of their position is that the section does not, and was not intended to, recognize pendent plaintiff jurisdiction.[2] We disagree.

The section specifically includes within the supplemental jurisdiction of the district courts "claims that include joinder or intervention of additional parties." This language is broad enough to include a pendent plaintiff who is named in the original complaint, not just one, as the defendants argue, who may subsequently be joined, or seek to join, or who intervenes. *See, e.g.,* Fed.R.Civ.P. 20(a) ("All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction. . . ."). The Third Circuit has placed this interpretation on section 1367(a) in connection with pendent party defendants named in the original complaint. *See Brown v. Grabowski,* 922 F.2d 1097, 1121 n. 17 (3d Cir.1990). *See also Rosen v. Chang,* 758 F.Supp. 799 (D.R.I. 1991). And we see no reason to distinguish between pendent party plaintiffs and pendent party defendants in this regard.

Resort to the legislative history is not necessary but we note that it is consistent with our position. One of the purposes of the section was to make pendent party jurisdiction available in cases brought in federal court. *See* 136 Cons.Rec. S17580 (daily ed. Oct. 27, 1990) ("Section [1367] implements a recommendation of the Federal Courts Study Committee by authorizing federal courts to assert pendent jurisdiction over parties without an independent federal jurisdictional base.") (brackets added). *See also* H.Rep. No. 734, 101st Cong., 2d Sess. at p. 28, *reprinted in* 1990 U.S.

---

**1.** Subsection (b) deals with diversity cases and is irrelevant to the instant action where jurisdiction is predicated upon federal law.

**2.** A pendent plaintiff has a claim over which there is no independent basis of federal jurisdiction but who seeks to bring that claim in federal court because another plaintiff asserts a claim against the same defendant over which there is federal jurisdiction and both claims derive from a common nucleus of operative fact. *See Burkett v. Western Maryland Railway Co.,* 595 F.Supp. 1058 (M.D.Pa.1984) (discussing a pendent party defendant).

Code Cong. & Admin.News 6802, 6860, 6874, which stated that the effect of the section was to permit jurisdiction in cases like *Finley v. United States*, 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989). In *Finley*, the Supreme Court, although in the context of the joinder of two defendants subsequent to the filing of the initial complaint, discussed pendent party jurisdiction generally and held that it could not be exercised over the joined defendants under the Federal Tort Claims Act, 28 U.S.C. § 1346. *Finley* was interpreted as possibly precluding pendent party jurisdiction in most instances. *See* 13B Wright, Miller & Cooper, *Federal Practice and Procedure* § 3567.2 (Supp.1991).

Thus, in accordance with section 1367(a), we must determine whether Lynn Arnold's claim is "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Such a determination can be made under the standard set forth in *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), although that case dealt with pendent claim jurisdiction.

> *Gibbs* ... held that "[p]endent jurisdiction, in the sense of judicial *power*, exists whenever there is a claim 'arising under [the] Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority ...,' US Const, Art, III, § 2, and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional 'case.'" 383 US, at 725 [86 S.Ct. at 1138,] (emphasis in original). The requisite relationship exists, *Gibbs* said, when the federal and nonfederal claims "derive from a common nucleus of operative fact" and are such that a plaintiff "would ordinarily be expected to try them in one judicial proceeding." *Ibid.*

*Finley v. United States*, 490 U.S. 545, 548–49, 109 S.Ct. 2003, 2006, 104 L.Ed.2d 593, 601 (1989) (brackets in *Gibbs* and also added in part by *Finley*).

This standard is satisfied here. First, Lynn Arnold's nonfederal claim derives from a common nucleus of operative fact with his wife's federal claim under Title VII. The identical issue was presented in *Bowersox v. P.H. Glatfelter Co.*, 677 F.Supp. 307 (M.D.Pa.1988). In that action, the pendent plaintiff husband was seeking damages for the loss of his wife's consortium in the same suit in which she brought a Title VII claim. The court stated:

> The facts which Allen Bowersox must prove in order to sustain his claim have at least a common nucleus with the facts supporting Joanne Bowersox's Title VII claims, even though the loss of consortium claim does not parallel the Title VII claims as extensively as does the claim for intentional infliction of emotional distress. The common nucleus of operative fact between the loss of consortium claim and the Title VII claims is simply that Joanne Bowersox was allegedly the subject of sexual harassment by her supervisor and that the harassment resulted in injury to her.

*Id.* at 315.

We thus reject the defendants' argument that the claims do not arise from a common nucleus of operative fact merely because Pennsylvania courts, which, of course, normally deal for the most part with state law claims, would consider that, under state law, the husband's cause of action is derivative of his wife's state law claim. *See, e.g., Manzitti v. Amsler*, 379 Pa.Super. 454, 550 A.2d 537 (1988). As a matter of federal law, and for the purposes of the federal jurisdictional issue we must decide, it also derives, or is so related to her federal claim, that it shares a common nucleus of operative fact with the federal claim.

Second, this is the type of claim that the plaintiffs would be expected to try together. *Id.* at 460 n. 2, 550 A.2d at 540 n. 2.[3]

*See Gibbs, supra*, 383 U.S. at 725, 86 S.Ct. at 1138, 16 L.Ed.2d at 227.

---

**3.** To the extent it is also a factor, we conclude that the federal claim has sufficient substance to confer subject matter jurisdiction on the court.

Finally, since defendants have not cited any federal statute which explicitly divests us of jurisdiction to entertain the loss of consortium claim in the context of this litigation, we conclude that section 1367(a) authorizes us to exercise jurisdiction over that claim.

■ Defendants argue that, if we conclude we do have jurisdiction over Lynn Arnold's claim, we should exercise the discretion granted us by section 1367(c) to decline to do so. They cite *Davis v. Devereux Foundation,* 644 F.Supp. 482 (E.D.Pa. 1986); *Polay v. West Co.,* 629 F.Supp. 899 (E.D.Pa.1986); and *Duva v. Bridgeport Textron,* 632 F.Supp. 880 (E.D.Pa.1985), in support of this position. These Title VII cases, all decided before the enactment of section 1367, refused to entertain pendent claim jurisdiction over the plaintiff's state law claims either because entertaining such claims was perceived to violate congressional policy concerning speedy resolution of Title VII claims and the nature of the relief to be granted under that statute, *see Davis,* or doing so would subvert the Title VII administrative mechanism and greatly expand the issues to be tried. *See Duva* and *Polay.* The latter case also refused to entertain an intentional infliction of emotional distress claim because it would have required resolution of an unsettled issue of state law. *Duva* was also concerned with unsettled state law issues.

The court in *Bowersox* discussed these cases and all of these matters, *see* 677 F.Supp. at 314–15, and decided to exercise jurisdiction. In connection with the discretionary authority conferred upon us by section 1367(c), we agree with the reasoning of *Bowersox* and we will not exercise our discretion to dismiss Lynn Arnold's loss of consortium claim. Based upon *Bowersox,* we also reject the defendants' request, first set forth in their reply brief, that we dismiss Kathleen Arnold's pendent state law claims.